## JOSEPH GARCEAU v. MICHAEL McNAMARA.[1]

March 6, 1914.

Nos. 18,491—(263).

**Attorney and client — purchase by attorney — evidence.**

An attorney for a defendant in an ejectment suit, after the termination of the suit in favor of the plaintiff, purchased, for a valuable consideration, the interest of the plaintiff in the land. The trial court found that, before doing so, he advised his client fully as to his rights and the client decided not to take further proceedings in the matter, and, further, that the purchase was made with the consent and approval of the client. These findings are sustained by the evidence. Under this state of facts, it can-

---

[1] Reported in 145 N. W. 809.

Note.—As to the right of an attorney to purchase subject-matter of litigation or of retainer from client and his duty in relation thereto, see notes in 23 L.R.A.(N.S.) 679 and 28 L.R.A.(N.S.) 723.

not be held that the money paid by the attorney for the deed to him was merely an advancement in the interest of the client, or that the deed was taken as security for money advanced. Nor can it be held that the attorney held the land in trust for his client. An attorney at law is held to the highest duty of fidelity to his client. When an attorney purchases from the adverse party the subject-matter of litigation, either during the pendency of the litigation, or after it is over, the burden is upon him to establish the fairness and good faith of the transaction. But the law does not absolutely disable him from so purchasing. Where it is clear that the client intended that he should do so and acquiesced in his action in so doing, and the transaction is open, honest, and fair and there is no fraud or concealment and no advantage taken by the attorney, the transaction will be upheld. The facts of this case bring it within this rule, and the purchase by the attorney is sustained.

Application by Joseph Garceau to the district court for Ramsey county to register title to a certain lot in the village of White Bear. Defendant Michael McNamara filed his answer alleging that he was the owner and entitled to the possession of the premises described. Defendant McNamara's motion to make Julius A. Haussner and Philip Gilbert parties defendant was granted, Kelly, J., and defendant Haussner filed his answer. The application was heard by Brill, J., who made findings and ordered judgment in favor of the applicant, Joseph Garceau, and dismissing defendants Gilbert and Haussner from the proceeding. From an order denying his motion for amended findings or for a new trial, defendant McNamara appealed. Affirmed.

*John R. Dowlan, G. L. Spangler* and *D. E. Dwyer,* for appellant.
*Morphy, Ewing, Bradford & Cummins* and *McElwee & Payte,* for respondent.

HALLAM, J.
In 1900, defendant McNamara was in possession of a lot in White Bear, claiming to own it. He lived in a small house on the lot and had a small blacksmith shop thereon. One Duncan began a suit in ejectment against him. McNamara consulted defendant Haussner, a business man in White Bear for whom he did work. Defendant Gilbert was an attorney at law. Haussner advised McNamara to

retain Gilbert, and he did so. The case was tried and Duncan secured a verdict. McNamara, Gilbert and Haussner then advised together as to further proceedings. There is some conflict in the testimony as to what ensued. Gilbert testified that he fully advised McNamara as to his rights, including his right to a second trial, and also as to his right of appeal. Several conferences. were had. The result of them all was that Gilbert and Haussner bought up the interest of Duncan for a substantial consideration, paid some back taxes against the property and the costs of the litigation and also took a quitclaim deed from McNamara for a nominal consideration. Gilbert and Haussner held the property together until 1906, when Haussner deeded to Gilbert all his interest in it. Gilbert continued to own it until 1911. During this period Gilbert and Haussner paid the taxes on the lot and made substantial improvements upon it. McNamara continued in possession. Down to 1909, he made monthly payments either in cash or services. These payments, at first $5 a month, were increased to $7, and later to $11, as improvements were made upon the property. For a period of about a year, beginning in 1908, he made these payments to a bank at White Bear, and there is evidence that he requested the bank to give him receipts showing the payment of "rent," and that this was done. For a time, part of the premises was rented to one LeClaire, and the rent was paid to Gilbert and Haussner with the knowledge of McNamara. He made no claim therefor. In 1909 McNamara stopped his payments. Gilbert brought action against him in the municipal court of St. Paul, to evict him for nonpayment of rent, and procured judgment of eviction. Later Gilbert leased the premises to one Beckstad, and Beckstad sublet to McNamara. This situation continued until Gilbert sold the property in 1911.

McNamara claims that Gilbert and Haussner bought the property from Duncan with the agreement that McNamara should receive a deed from them upon reimbursing them for what they had expended in the purchase and improvement of the ·property. Gilbert and Haussner deny that any such agreement was made, and claim that they bought the property at McNamara's request, with the explicit understanding that they purchased it for their own use, and that

McNamara was to continue in possession as their tenant. The applicant succeeded to the rights of Gilbert and Haussner in the property and commenced this proceeding to register title. McNamara answered, setting up the agreement claimed by him, and asked the court to adjudge title in him. The court found that no such agreement was made and ordered the title registered in the name of applicant. It is conceded that there is evidence to sustain this finding.

Defendant McNamara contends that the deed to Gilbert and Haussner should be construed as a mortgage to secure the advances made by them. This contention cannot be sustained. It is distinctly negatived by the finding of the court that they purchased the lot for their own use.

The contention is now made that, by reason of the fiduciary relation of attorney and client existing between Gilbert and McNamara, Gilbert had no right to buy any interest in this property for his own use, that a purchase by him for his own use was a fraud upon McNamara, and that the court should have found that Gilbert and Haussner held the title in trust for him.

It is not at all clear that this claim was ever made in the trial court. But, however this may be, we think it clear that under the findings of the court and the evidence in the case the contention cannot be sustained. It is apparent that whatever title Gilbert and Haussner got they received from Duncan. We have then the case of an attorney at the conclusion of a law suit, purchasing an interest in the subject of the litigation.

This court has always held attorneys at law to the highest duty of fidelity to their clients. Owing to the confidential and fiduciary relation between attorney and client, and the influence of the attorney over the client because of that relation, courts scrutinize very closely all transactions by which the attorney acquires any interest in property which is the subject matter of his employment, either during the pendency of the litigation or after it is over. The burden is upon the attorney to establish the fairness and good faith of the transaction. This is upon the general rule that "he who bargains, in a matter of advantage, with a person placing a confidence in him, is bound to show that a reasonable use has been made of that confi-

dence." Tancre v. Reynolds, 35 Minn. 476, 29 N. W. 171; Klein v. Borchert, 89 Minn. 377, 95 N. W. 215; Story, Eq. Jur. § 311. But the law does not absolutely disable the attorney from contracting with his client, nor from purchasing the subject matter of the litigation. Where it is clear that the client intended that the attorney should buy, and acquiesced in his action in so doing, and the transaction is open, honest and fair and there is no fraud or concealment and no advantage taken by the attorney, the transaction will be upheld. Turner v. Fryberger, 99 Minn. 236, 107 N. W. 1133, 109 N. W. 229. In this case the court found that McNamara "after being fully advised as to the situation and his rights * * * decided not to take further proceedings in the matter," and that thereafter Haussner and Gilbert made the purchase for themselves with the consent and approval of McNamara. There is sufficient evidence to sustain this finding, and under this state of facts the purchase by Gilbert and Haussner should be upheld.

The exceptions to the rulings of the court on the trial present no reversible error.

Order affirmed.