### SHOTWELL v. DIXON et al.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

1. JUDGMENT—REVERSAL—COSTS—EXTRA ALLOWANCE TO DEFENDANTS—ORDER
—CONSTRUCTION—REFUND.

Where a judgment creditor sued to have certain transfers made by his debtor prior to a general assignment by the latter declared fraudulent, and a judgment in favor of the creditor was reversed on appeal, and subsequently an order was made allowing defendants in the action an extra allowance of costs, consisting of 5 per cent. on plaintiff's judgment, the order had reference to the amount of the judgment against

the assignor, and not to the sum claimed by defendants to be the amount of the transfers set aside by the judgment obtained by plaintiff in his action impeaching the transfers.

2. PAYMENT—ALLOWANCE TO DEFENDANT—ERRONEOUS COMPUTATION—RECOVERY BY PLAINTIFF.

The amount allowed was computed on the sum claimed by defendants' attorneys to be the amount of the transfers set aside by the judgment that plaintiff had obtained, instead of the amount of plaintiff's judgment against the assignor, and the amount so computed was paid to defendants' attorneys, who credited their clients with such sums as they received. *Held*, that it was error to deny plaintiff's motion to compel the attorneys to refund the money to plaintiff.

Appeal from special term, Fulton county.

Action by Samuel H. Shotwell against Baltic H. Dixon and others. From an order denying plaintiff's motion to compel defendants' attorneys to refund money erroneously paid by the plaintiff as an extra allowance of costs, plaintiff appeals. Reversed.

This action was brought by the plaintiff, who had recovered a judgment for $977.30 against Dixon & Wilkins, to have adjudged fraudulent certain transfers made by them previous to their general assignment. The plaintiff prevailed at the trial term. The appellate division (48 N. Y. Supp. 984) reversed the judgment, and the court of appeals (57 N. E. 178) affirmed the order of the appellate division, and ordered judgment absolute for the appealing defendants, with costs. On July 28, 1900, the special term made an order granting an additional allowance of $650 to the defendants Byron D. Brown, Walter W. Dixon, Edward S. Childs, and Firmer W. Brown, who on July 30th entered judgment in their favor for $1,149.11 costs, which included the $650 additional allowance, and on August 1, 1900, issued execution therefor. On September 4, 1900, the appellate division modified the order of the special term by reducing the allowance to 5 per cent. on the plaintiff's judgment, and thereafter on the execution in the hands of the sheriff an indorsement was made, "Within execution reduced to $1,114.95 on July 30th, 1900." On about December 29, 1900, the plaintiff paid to the sheriff $1,169.04, the amount of the execution, with costs and sheriff's fees; and on December 31, 1900, the sheriff paid to one of the attorneys for the defendants the amount collected on the execution, less sheriff's fees, and within two or three days thereafter the attorney receiving the same paid to each of the other two attorneys appearing severally for the defendants their respective shares of the additional allowance collected on the execution. The amount of the additional allowance thus collected and paid to the attorneys was $627.34, being 5 per cent. on $12,546.71, claimed by defendants' attorneys to be the amount of the transfers set aside by the judgment which the plaintiff obtained at the trial term, instead of 5 per cent. on $977.30, the amount of plaintiff's judgment, on which he had brought his action, and on which the order of the appellate division required the computation for an allowance of 5 per cent. to be made. The excess thus erroneously collected was $578.48, besides interest. Each of the three attorneys representing the defendants settled with his clients by crediting to them on the clients' indebtedness for professional services the proportionate share of the additional allowance which he had received. On March 5, 1901, on motion made by the plaintiff, who insisted that the order of September 4, 1900, made by the appellate division, reducing the allowance to 5 per cent. on plaintiff's judgment, meant an allowance of 5 per cent. on $977.30, the amount of plaintiff's judgment as set out in the complaint, the appellate division amended its order of September 4, 1900, so as to specify that its allowance was 5 per cent. on $977.30. After the entry of the order of March 5, 1901, a demand was made upon two of the attorneys for a return to the plaintiff of $578.43, claimed to have been improperly collected on the execution; and, the demand not having been complied with, the plaintiff gave notice of a motion to be made at a special term requiring the attorneys to return to the plaintiff the sum of $578.43, and from the order denying such motion this appeal is taken.

Argued before PARKER, P. J., and SMITH, KELLOGG, ED-
WARDS, and CHASE, JJ.

N. M. Banker (H. D. Wright, of counsel), for appellant.
Clarence W. Smith, R. P. Anibal, and D. H. McFalls, for respond-
ents.

EDWARDS, J. I think the court erred in denying the plaintiff's
motion to compel the attorneys to restore to the plaintiff the allow-
ance of costs collected by them in excess of the sum to which, under
the order of this court, they were entitled. While I do not doubt
that the money was collected by them in good faith, through a mis-
interpretation of the order of this court, the absence of any wrong-
ful purpose on their part cannot relieve them from their duty to
make restitution. The order modifying the order of the special
term by reducing the allowance to 5 per cent. on the plaintiff's judg-
ment clearly had reference to his judgment of $977.30 set forth in
his complaint in this action. He had no other judgment. The
money erroneously collected by the attorneys was never in fact paid
over by them to their clients, but was credited by them to their cli-
ents on indebtedness to them for professional services. It was
money to which neither the attorneys nor their clients had at any
time any legal right. The power of the court to compel restitution
to the plaintiff is not denied, but it is urged by the counsel that
the facts do not justify the exercise of such power. I think other-
wise. The case is in principle unlike those where money has been
collected by an attorney on a judgment in law deemed to be valid,
and a settlement has been had with his client before the reversal of
the judgment. There the client has a legal right to the money.
Here there was no such right, and the presumption that the attor-
ney had knowledge of that fact is conclusive. The acquisition of
the money under such circumstances is wrongful in fact, though not
in intent, and furnishes proper ground for an order for its restora-
tion. An essential distinction exists between the facts of this case
and those in Langley v. Warner, 3 N. Y. 327, and Butcher v. Hen-
ning, 90 Hun, 565, 35 N. Y. Supp. 1006, cited by the defendants'
counsel. In the former the money was collected by the attorney
from the plaintiffs on a judgment, and after its receipt by him there
was a settlement between him and his client. Thereafter the judg-
ment was reversed, and, an execution against the client on the judg-
ment of reversal having been returned unsatisfied, the plaintiff
brought suit to recover from the attorney. The court said:

"Walsh [the plaintiff in the action in which judgment was recovered] had
a perfect title to the money when it was collected." "No one was bound to
presume that the judgment of a court of competent jurisdiction was erro-
neous and would be reversed. The legal presumption was the other way,
—that the judgment was right, and would be affirmed."

The court further said:

"We are referred to cases where money paid to an agent has been recovered
back from him notwithstanding the fact that he had given his principal credit
for the money in account. But they are all cases where the principal had
no right to the money at the time it was paid to the agent, while here the

principal had a perfect right to the money at the time his agent received it. The distinction is obvious."

In Butcher v. Henning the facts were the same as in Langley v. Warner. There the defendant had a right to receive the money when it was paid to him, and the court simply held that on a reversal of the judgment an action will not lie against the attorney to recover the money, where by agreement between him and his client he had retained it in payment of a debt from the client. There the moneys were collected by the attorneys on judgments which the law deemed to be valid, and the clients had a legal right to such moneys. Here, as I have said, the attorneys received money which they are deemed to have known to belong to the plaintiff, and not to their clients. This case is similar in all its important features to Moulton v. Bennett, 18 Wend. 586, where the attorney had improperly taxed costs, and received them under a misapprehension of his client's right to them. The costs were voluntarily paid to the attorney, who had paid out of them $60 for counsel fees, and had paid over $65 to his client, but the attorney was ordered by the court to refund. The principle there announced is here applicable. While we cannot impute wrong intent in the receipt of the money, we must impute legal error which calls for restitution.

The order appealed from should be reversed, and the motion granted. All concur.