## STATE v. ARCHIE M. CAREY AND OTHERS.

IN THE MATTER OF THE SUMMARY PROCEEDINGS IN ABOVE CAUSE ON PETITION OF MARY C. LANDIS, AND OTHERS, PETITIONERS v. EDWARD ST. JOHN CONDON, RESPONDENT AND APPELLANT.[1]

April 7, 1922.

No. 22,802.

**Order to show further cause not appealable.**

1. An order, issued upon the hearing of an order to show cause, directing a respondent to further show cause why he should not do a certain act, is not a final order and is not appealable.

**Person failing to show cause cannot attack order made after his default.**

2. One who defaults when served with an order to show cause, in a matter within the jurisdiction of the court, is not in position to attack the final order rendered therein, such order being responsive to the issues presented by the order to show cause.

**Attorney may be summarily dealt with under section 4956 for improper use of bail money.**

3. An attorney who, while acting as such, receives the money or property of another to deposit as bail for an accused, may be summarily dealt with as an officer of the court, under section 4956, G. S. 1913, if he attempts to deprive the true owner of his property.

**Title to bail money by virtue of section 9084.**

4. Money deposited in lieu of bail for a defendant in a criminal proceeding, which money was not owned by him, does not become his property by virtue of section 9084, G. S. 1913, except as to the state and the custodian of the deposit, the clerk of the court.

**Res judicata.**

5. The judgment relied on by appellant as res judicata of his claim is not such on his own theory, nor on this record.

Upon the affidavits of Clara M. John, Mary C. Landis and Lafayette M. Reid, the district court for Hennepin county granted its

[1] Reported in 187 N. W. 710.

order directing Edward St. John Condon to show cause why an order should not be made requiring him to deliver to said affiants $1,000 in money and $1,000 in liberty bonds received by him as attorney for Willis E. Landis for deposit with the clerk of said court in lieu of bail for said client. Willis E. Landis also appeared and filed the petition mentioned in the second paragraph of the opinion. The matter was heard by Nye, J., who made the orders mentioned in the third paragraph of the opinion. From those orders Edward St. John Condon appealed. Affirmed.

*John F. Bernhagen* and *Victor M. Petersen*, for appellant.

*J. J. Truax* and *Clinton A. Rehnke*, for petitioners.

HOLT, J.

The appellant, Edward St. John Condon, is an attorney. He was employed as such by Willis E. Landis, who on November 4, 1919, had been indicted for crime in Hennepin county and whose bail had been fixed at $2,000. His mother, Mary C. Landis, and sister, Clara M. John, interested themselves in securing his release. With the assistance of a personal friend, Lafayette M. Reid, and a loan from the bank made to Mary C. Landis, $1,000 in cash and $1,000 in liberty bonds were turned over by them to Condon, as attorney for Willis, to be deposited with the clerk of the district court of Hennepin county as bail for Willis. Condon did so deposit the same. Later, on April 27, 1920, Condon procured an assignment of this money and bonds from Willis. When this came to the knowledge of Mary C. Landis and Reid, the owners of the property, and said Clara M. John, who had been instrumental in raising and turning over the same to Condon, they brought an action against Condon, Willis and the clerk of court to have the assignment declared void on the ground that Willis and Condon had fraudulently conspired to deprive the owners of their property. Willis was not served, Condon demurred. The demurrer was sustained and judgment thereon entered, August 23, 1921, that plaintiffs take nothing against Condon.

On September 29, 1921, upon affidavits of Clara M. John, Mary C. Landis and Reid, the court issued an order directing Condon to show cause, on October 8, 1921, why he should not relinquish his claim

to said money and bonds.   On November 10, 1921, Willis E. Landis filed a petition in the proceeding showing that the indictment was nolled on December 18, 1920, and his bail exonerated; that the money and bonds deposited as bail belonged to his mother and Reid; that Condon was his attorney in procuring his release; that as such he came to him, Willis, and represented that a bail bond ought to be obtained and substituted for the deposited money and liberty bonds, and to that end it was necessary for him, Willis, to sign the paper Condon presented; that he did sign such paper relying on Condon that it was to be executed for the purpose represented; that he afterwards learned it was an assignment and that no bail bond had been secured; that he, Willis, thereupon brought an action to set aside the assignment so obtained; that while this was pending Condon got him drunk and kept him drunk for several days, and while so under the influence of liquor obtained his, Willis' signature to a dismissal of the case; that thereafter he sought advice of his present counsel, and after fully stating the facts to him, filed this petition in intervention, asking the court to take summary action and require the clerk to turn over the money to the true owners and determine that Condon had forfeited all right to fees for services rendered him.

At the time Willis filed this petition in intervention Victor M. Peterson, Condon's present attorney, made and filed a special appearance attacking the jurisdiction of the court in that Mary C. Landis, Clara M. John and Lafayette M. Reid had no right to institute the proceeding, they not being clients of Condon.  The court by an order filed on November 30, 1921, overruled the objections raised by the special appearance, and, after reciting the facts disclosed by the petitions and records of the court and the admissions made at the hearing by Condon's counsel as to the facts, among which was the one that when Condon received the liberty bonds and money he knew the same belonged to the petitioners Mary C. Landis and Reid and not to Willis, directed and ordered that said money and liberty bonds be delivered in kind by the clerk of the court to the said owners, unless Condon on December 2, 1921, at 2 p. m. "shall show further cause, if any there be, before the judge in Chambers of this Court, why such relief should not be granted."   And the

court further ordered that Willis E. Landis, on the petition filed by him, be recognized as a party to the proceeding and that Condon be heard on said December 2, 1921, at 2 p. m., or as soon thereafter as counsel could be heard, on such issues as he may raise upon the petition of Willis and that the truth thereof be summarily inquired into, tried and determined. The files of the district court returned here show that this order was served December 1, 1921, on Condon personally by the sheriff. He did not appear, and the court made findings directing the clerk of the district court to deliver the liberty bonds and money to the owners mentioned whom the records in the clerk's office showed had deposited the same in lieu of bail for Willis, and the court also found that "on account of the misconduct on the part of said attorney, Edward St. John Condon, he forfeited any and all right, if any he had, to any lien for services upon the property deposited in lieu of bail." From these two orders Condon appeals.

It is plain that the order filed November 30, 1921, is not an appealable order. It was not final. It directed Condon to appear and show cause on December 2, 1921, if any he had, why an order should not be made as prayed by the original petitioners and by Willis, the intervener. The appeal as to that order must be dismissed.

It is difficult to see whereof he may now complain of the second order. Although duly served, he defaulted. Conceding all the proceedings prior to the order of November 30, to have been without jurisdiction, the service of that order certainly brought Condon within the jurisdiction of the court, and that order and the records of the court referred to therein were sufficient both as to allegations and proof, standing undenied, to justify the order of December 2, 1921. The decision might well rest on this conclusion, were it not that certain legal propositions having a bearing upon the obligations of attorneys, and which have been so earnestly pressed by counsel who represent Condon, would seem to require a determination.

It is first claimed that the court acquired no jurisdiction over Condon by the order to show cause issued upon the petition of persons who were not his clients. There is no merit to the contention. Attorneys are officers of the court, and for misconduct as such may

be summarily dealt with by the court. They may be disbarred for unprofessional conduct, even though it did not occur in representing a client in a legal proceeding. In re Cary, 146 Minn. 80, 177 N. W. 801, 9 A. L. R. 1272. In Misenich v. Nelson, 148 Minn. 479, 181 N. W. 319, we held that the district courts of this state under section 4956, G. S. 1913, "have undoubted jurisdiction to inquire as to the conduct of attorneys towards their clients, not only in respect to actions therein pending, but also in respect to other legal business, no matter what such business may have been." As attorney, Condon obtained the money and liberty bonds from Clara M. John, for a certain purpose, knowing that they belonged to Mary C. Landis and Reid. In a sense he acted for them in his professional capacity, though without a right to look to them for compensation. Their confidence in him as the attorney for Willis induced them to intrust him with the property. We think their relation to him was sufficiently close so that, if he, by unprofessional conduct, abused their confidence, the court could summarily call him to account. That the conventional relation of attorney and client need not necessarily exist in order that one who has paid money to an attorney for a certain purpose may compel its return in a summary manner is shown by the following cases: Hess v. Conway, 92 Kan. 787, 142 Pac. 253, 4 A. L. R. 1580; Anderson v. Bosworth, 15 R. I. 443, 8 Atl. 339, 2 Am. St. 910.

In the Hess case the court said [p. 796]: "It does not require the citation of authorities to demonstrate the jurisdiction of the court to exercise summary disciplinary power to enforce honorable conduct on the part of its own officers. Usually the power is invoked to compel attorneys to do justice toward their clients in matters connected with litigation, but it may be exercised to compel the performance of duties to others than clients, and it extends to any matter in which the attorney has been employed because of his professional character." This case was carried to the Federal Supreme Court on the contention that the summary proceeding did not constitute due process of law, but was affirmed (Holmes v. Conway) 241 U. S. 624, 36 Sup. Ct. 681, 60 L. ed. 1211.

In the Rhode Island case the petitioner obtained an order in a summary proceeding requiring the attorney who had received from his client money for the petitioner's use to pay it over to her, the court saying [15 R. I. 445]: "In general the jurisdiction applies only between attorney and client, but it is not confined strictly to that relation." Moulton v. Bennett (N. Y.) 18 Wend. 586; Wilmerdings & Mount v. Fowler (N. Y.) 45 How. Pr. 142; Shotwell v. Dixon, 66 App. Div. 123, 126, 72 N. Y. Supp. 668.

Our statute, section 4956, G. S. 1913, is if anything, as broad as the common law rule as stated in the decision named. It reads: "Whenever an attorney shall refuse to deliver money or papers to a person from or for whom he has received them in the course of his professional employment, he may be required to do so by an order of court." In case the attorney claims a lien on the same the section provides the mode of determining that matter. It is to be noted that the statute does not in terms restrict the remedy to clients. Condon, in the course of his professional employment, received this property directly from one of the petitioners to be deposited as bail for his client, with full knowledge that it was not the client's property and that the client had no title or claim thereto. Notwithstanding such knowledge, he procures an assignment from the client who has nothing to transfer. We have no hesitancy in holding that the facts, of which there is no dispute in this record, abundantly sustain the jurisdiction of the court to hear and determine the matter under said section 4956. Charest v. Bishop, 137 Minn. 102, 162 N. W. 1063, is not opposed to this conclusion. There the money was held a loan to the petitioner from his daughter. The daughter did not give her money to the attorney. When it came to his hands it was the petitioner's.

But, nevertheless, it is claimed that under section 9084, G. S. 1913, the money and bonds, upon being deposited as bail, became absolutely and incontestably the property of Willis E. Landis. The here important provisions read: "Whenever cash bail shall be deposited in lieu of other bail, such cash shall be the property of the accused, whether deposited by him personally or by any third person in his behalf. Whenever cash bail shall be accepted by a judge

of a court of record, he shall order the same to be deposited with the clerk, there to remain until the final disposition of the case and the further order of the court relative thereto. Upon release in whole or in part, the amount so released shall be paid to the accused personally or upon his written order * * * Cash bail in the hands of the court or any other officer thereof shall be exempt from garnishment or levy under attachment or execution." Similar statutes in other states have been construed to go no farther than to secure the state and protect the custodian of the bail money against claims asserted thereto by anyone other than the person released from custody upon the cash being deposited in lieu of a bail bond. Mundell v. Wells, 181 Cal. 398, 184 Pac. 666, 7 A. L. R. 383; Wright & Taylor v. Dougherty, 138 Iowa, 195, 115 N. W. 908; Ex rel. Meyer v. Gould, 75 App. Div. 524, 78 N. Y. Supp. 279; Cohen v. Bruere, 96 Misc. 609, 162 N. Y. Supp. 75.

In the case of Mundell v. Wells the court after reviewing the authorities held [p. 404]: Although, as between defendant and the state, money deposited for bail is regarded as a defendant's property and will be applied so far as necessary to the satisfaction of the fine, nevertheless in a contest involving the residue in the hands of the clerk after the payment of the fine, the court will inquire into who is entitled to the money, as between the one who put it up, and a judgment creditor of the defendant. We approve this rule, except that under our statute, such a deposit is exempt from attachment, execution and garnishment. Particularly was it proper for the court to inquire as to the ownership in this case, because with the clerk were filed conflicting orders or directions signed by Willis E. Landis, the person bailed. By one order the clerk was directed to deliver the deposit to Condon, and by the one filed September 2, 1921, he was directed to deliver the same to Mary C. Landis and Reid, the true owners. The deposit had remained in the custody of the court from the time it was deposited until the order of December 2, 1921, was made.

The last contention is that the judgment entered upon Condon's demurrer, above mentioned, is res judicata of the validity of the assignment of the bail to him. There are several sufficient answers

to this claim. The demurrer could have been properly sustained on the ground that the complaint contained no allegation that the case against Willis had been nolled, or his bail exonerated. Again, even if it were adjudicated as between the true owners of the property deposited in lieu of bail and Condon that the assignment from Willis was not a fraudulent scheme between the assignor and assignee, nevertheless it could not pass the title, since the assignor Willis did not own the property. For, as we construe said section 9084, the true owners were not in virtue thereof divested of their property except as to claims of the state against Willis and the protection of the court's custodian of the deposit. Furthermore, the judgment upon the demurrer of Condon did not bind Willis. He, though a party to the suit, was not served and made no appearance therein. As between him and Condon the validity of the assignment and direction to deliver the deposit to the latter had not been adjudicated until the order of December 2, 1921, was made herein. So upon appellant's own theory, were it adopted, the judgment on the demurrer to which Willis was not a party did not determine his interest in the bail or the validity of the assignment. It seems to us that, irrespective of his ownership of bail money deposited under the provision of section 9084, the defendant, released because thereof, has such an interest in the return of the deposit to the right person, after it has served its purpose, that he may rightfully invoke the aid of the court to determine the matter.

But, the foregoing considerations aside, Condon is not in a good position to question the court's action. He has not seen fit to deny any part of Willis' verified petition in intervention nor to assert a lien for the services rendered. So far as the record goes, his demurrer in the action, now claimed to be res judicata, admitted as a fact that the bail deposited was to his knowledge the property of Mary E. Landis and Reid, and that, nevertheless, he conspired with Willis to deprive the true owners of the same by the assignment. The only excuse suggested, in any paper referred to in the record, for procuring from Willis an assignment, which on its face recites no consideration, is found in the answer of Condon in the action brought by Willis, and dismissed as above stated, wherein Condon claims a

$2,500 attorney's lien for services in a case nolled before it was reached for trial. Such a claim must have appeared to him so extortionate that when called upon to present it in this proceeding his courage failed him. This attempt by an attorney to deprive those whom he knew to be the rightful owners of a bail deposit suggests the need of legislation to curb a practice which we understand to be prevalent in some of our criminal courts. Cash bail is often fixed under the statute mentioned. Friends and relatives of the one under arrest are importuned, perhaps at the suggestion of his attorney, to furnish the bail fixed. When that is done the attorney secures from his client an assignment or order for the deposit, and thereupon claims all for his services regardless of their intrinsic value. By this procedure not only are exorbitant fees extorted, but they are taken from unfortunate friends and relatives who are not legally liable for the services of the attorney.

The appeal from the order filed November 30, 1921, is dismissed, and the order of December 21, 1921, is affirmed.