IN THE MATTER OF APPLICATION FOR REMOVAL OF
EDWARD ST. JOHN CONDON AS ATTORNEY AT LAW.[1]

November 2, 1923.

No. 23,131.

**Attorney guilty of unprofessional conduct in misappropriation of property.**
    1. The evidence sustains the findings of the referee, which we have
examined, approved and adopted, that the respondent, an attorney at
law, was guilty of unprofessional conduct in attempting to appropriate
to his own use property which he knew did not belong to his client,
but which had been entrusted to respondent by the owners thereof to
be deposited in lieu of a bail to secure the release of his client from
custody pending trial, and which property respondent knew was to be
returned to the owners when the purpose of bail had been served.

**Edward St. John Condon disbarred.**
    2. Upon the findings of the referee there must be judgment dis-
barring respondent from practicing as an attorney at law in this state.

The accusation against Edward St. John Condon was referred
to Hon. W. C. Leary, one of the judges of the district court for
Hennepin county, who heard the evidence and made findings that
the conduct of the accused had been wrongful and wilful and con-
stituted misconduct in his profession.   Affirmed.
    *Claude G. Krause*, for petitioners.
    *John F. Bernhagen*, for respondent.

PER CURIAM.
    A petition filed in this court by the president and secretary of
the Hennepin County Bar Association charging Edward St. John
Condon, duly admitted to practice law in the courts of this state,
with unprofessional conduct and asking his disbarment, was re-
ferred to Honorable W. C. Leary, a judge of the district court of
Hennepin county, to hear the evidence and make findings of fact
upon the matters alleged in the petition.   After taking testimony,

[1]Reported in 195 N. W. 492.

findings were made and reported to this court, which findings in all essential particulars sustain the charges made in the petition.

On the hearing upon the report in this court the respondent, Mr. Condon, takes exception to certain of the findings and asks for a dismissal of the proceedings.

The charges grow out of Mr. Condon's conduct in relation to the bail deposited for the appearance of his client, Willis E. Landis, in custody under an indictment returned by the grand jury of Hennepin county. Shortly stated the facts found are these:

On November, 1919, Willis E. Landis and two others were jointly indicted for the crime of extortion. Landis was arrested and confined in jail, when he employed Condon to represent him in the criminal proceeding. The district court fixed his bail at $2,000, $1,000 of which might be in cash and $1,000 in Liberty bonds. The mother of Landis, Mary C. Landis, raised $1,000 in cash and furnished Liberty bonds in the amount of $550, and L. M. Reid, a friend of the family, furnished $450 in Liberty bonds solely for such bail. A sister of Willis E. Landis delivered the cash and Liberty bonds to Condon to be deposited with the clerk of the district court as bail for Willis' appearance for trial. When Condon so received and deposited the bail, and prior thereto, he knew the money and Liberty bonds to be Mary C. Landis' and L. M. Reid's; that they had furnished the same for the sole purpose of a deposit in lieu of bail for Willis; that neither Mary C. Landis nor L. M. Reid intended or desired that either Willis E. Landis or Condon should acquire any interest or assume any control of or in any way dispose of said money or Liberty bonds other than for the purpose of bail, and that it was the expressed wish and desire of Mary C. Landis and L. M. Reid, so understood by Condon, that the same should be returned to them upon the disposition of the indictment, less any fine that might be imposed upon Willis. Condon believed that G. S. 1913, § 9084, vested in Willis the title to the property deposited as bail upon its reception by the clerk, but knew or should have known, in good conscience, good morals and in equity, it should be returned to Mary C. Landis and L. M. Reid after it had served its purpose

as bail. On April 27, 1920, Condon obtained an assignment of the money and bonds so deposited as bail from Willis, without the knowledge or consent of Mary C. Landis or L. M. Reid, with the purpose of obtaining the same for his own use and depriving the true owners thereof. This assignment Condon filed with the clerk of the district court on August 2, 1920, and, on December 18 following, the criminal prosecution against Willis was nolled and his bail exonerated.

In November, 1920, and also after the nolle, Mary C. Landis and L. M. Reid demanded of Condon a cancelation of the assignment of the bail deposit, but he refused, claiming the whole as his own. Subsequently Mary C. Landis and L. M. Reid instituted three proceedings, two of which were in their own names and one in the name of Willis, he consenting, to cancel and avoid the said assignment obtained by Condon from Willis. In none of these did Condon claim that Mary C. Landis employed him as attorney for Willis. During all the time until this proceeding, Condon wrongfully refused to relinquish his alleged right to the cash bail money and Liberty bonds mentioned, but made demands upon the district court clerk for delivery thereof to him so that he might appropriate the same for his own use. Condon was never retained or employed by either Mary C. Landis or L. M. Reid to act as attorney for Willis. The services rendered Willis by Condon were reasonably worth $500, of which $80 has been paid. Condon has claimed that he was entitled to a fee of $2,500 for his services and has at all times maintained that he had a right to and intended to apply this bail money and Liberty bonds in payment of such fees and that he had a lien on the same. He has expressed a willingness to arrive at a settlement of his claim for fees, but never has expressed a willingness to release the bail money and Liberty bonds.

There can be but one conclusion from the above facts found, namely, the respondent Condon's professional action and conduct in the matters referred to has been wilful and wrongful and constitutes misconduct in his profession and was a violation of the duties imposed upon him as an attorney at law.

One of these proceedings mentioned in the facts found, in which a cancelation of the assignment obtained by Condon from Willis was sought successfully, is reported in State v. Carey, 151 Minn. 517, 187 N. W. 710, and gives further details regarding Condon's conduct and claims. The evidence therein alluded to was all received by the referee herein as tending to support his findings of fact.

The respondent and his attorney assail the findings to the effect that Mrs. Landis did not employ respondent to act for her son Willis, and that respondent so understood; that Condon understood that the money and Liberty bonds should be returned to the true owners when the purpose of bail had been served; that the deposit was made solely for bail and respondent in good conscience knew that it should be returned; that respondent refused to relinquish his claim on the money and Liberty bonds deposited as bail; and that, though no contention was made by respondent that L. M. Reid employed him, he nevertheless claimed the Liberty bonds owned by Reid and deposited as bail. In addition, the finding as to the proceedings which culminated in the appeal, reported in State v. Carey, supra, is claimed to be immaterial.

The materiality of the last mentioned finding is quite evident when the position Condon took in those proceedings is considered. By an answer verified by him, in the proceeding where Willis was complainant in name, he asserted that Willis had employed him, and that the services in the criminal proceeding were rendered at Willis' "special request and upon his agreement to pay the defendant [Condon] therefor the sum of $2,500." In this proceeding Condon has completely shifted ground, contending and offering proof that Mrs. Landis employed him. This she denied, and, with the verified answer referred to in evidence, the referee was in good conscience compelled to find that Willis, and not his mother, employed Condon.

We need spend no time demonstrating the correctness of the finding as to Condon's knowledge that Mrs. Landis and Reid owned the property deposited as bail, that they deposited the same for the appearance of Willis for trial, and that it was to be returned to them

when that purpose had been served. Condon had known the Landis family for some time. He knew that Willis had had a criminal record; that the patience and means of the mother had well-nigh been exhausted in his behalf; that the friends of the family would not incur the risk of signing a bail bond for Willis; that Mrs. Landis could not justify as a surety on a bail bond and had to borrow the $1,000 cash deposited in lieu of such bond from a bank on her note indorsed by a friend, and that Reid and Mrs. Landis had loaned their Liberty bonds only for bail purposes. Condon admitted that he had skirmished around unsuccessfully for bondsmen, and knew of and had participated in all the efforts made by the family to have Willis released from custody pending the trial. With all this knowledge, Condon still bent his efforts to subjecting the property of others to the payment of his fees, and, unknown to the true owners of such property, procured an assignment from Willis thinking that the statute, section 9084, G. S. 1913, had passed the title to the property to Willis as against all the world. But even after ascertaining that this court interpreted the statute contrary to the meaning he gave it, Condon did not relinquish his claim.

Now he attempts to justify his course in taking the assignment for the protection of Mrs. Landis and Reid, fearing that Willis might obtain the deposited property and depart for Cuba. This belated excuse is so contradictory of Condon's conduct and contentions prior to the filing of this petition that there is little wonder it had no weight with the referee.

Another feature in this record reveals a trait of professional ethics not to be tolerated in an officer of the court. It is not embraced in the charge, but grows out of it, and indicates such an utter inability to estimate the value of professional services that he should not be allowed to prey on clients in the future. Respondent had the nerve to claim a fee of $2,500. The referee found one-fifth thereof to be reasonable, and we deem that amount exceedingly liberal. One of the parties indicted with Willis was tried. When the state rested, his case was dismissed. It is now claimed by the attorney for respondent, that the indictment was a flimsy and transparent frame-up. If so, excessive fees for defending in so weak a case are not

justifiable. Condon listened to the criminal trial. He took no part He interviewed the county attorney many times about a nolle for Willis, saw a number of persons for the purpose of procuring a bail bond, visited Willis in jail several times and consulted with the attorneys who conducted the defense in the criminal trial mentioned. But surely Condon could not hope to find any court of justice blind enough to appraise the value of the services he rendered at so large a sum as $2,500. Even in the defense of an alleged extortioner the lawyer is not justified in also becoming an extortioner. Overreaching and oppressing a client and his relatives in the manner here attempted by respondent, brings reproach to the profession, and when brought to the attention of a court cannot be regarded otherwise than as attempted extortion or worse.

The findings of the referee are approved and adopted and the respondent Edward St. John Condon is found guilty of wilful and wrongful misconduct in his profession requiring his removal from office.

It is therefore ordered that the name of respondent be stricken from the roll of attorneys and that he be removed from his office of attorney at law in this state and a formal judgment of disbarment be entered.