# IN RE DISBARMENT OF MYRON L. SKINNER.[1]

June 10, 1927.

No. 25,749.

**Attorney disbarred because of wilfully false representations to a person not his client.**

An attorney, by wilful and known false representations to others than clients who, to his knowledge, trust to such representations as coming from one able to speak the truth both as to law and fact, may be guilty of unprofessional conduct warranting removal from his office as attorney at law.

Attorney and Client, 6 C. J. p. 600 n. 78.

Proceeding for the disbarment of Myron L. Skinner. The matter was referred to Honorable Norman E. Peterson, judge of the Tenth judicial district, who heard the testimony and made findings. Judgment of disbarment ordered.

*Harold G. Cant* and *Clay W. Johnson,* for state board of law examiners.

*Myron L. Skinner,* pro se.

PER CURIAM.

This is a proceeding to disbar Myron L. Skinner, an attorney at law, for unprofessional conduct, instituted by the state board of law examiners.

The misconduct charged occurred in a transaction with William M. Conklin, and as found by the referee is substantially this: In October, 1923, Conklin purchased the home of respondent's mother in Faribault, Minnesota, for $2,000. One hundred dollars was paid down, and on December 10, 1923, the deal was closed by Conklin's paying the balance and receiving her warranty deed. Respondent conducted the transaction in behalf of his mother. In making the last payment Conklin gave a check to one Reising, who held a first

[1]Reported in 214 N. W. 652.

mortgage, for $414.27, and one to respondent's mother for $1,501.71, which she indorsed and respondent deposited to his credit in a bank in Minneapolis. When the checks were given in exchange for the deed, respondent told Conklin that he received a good title free and clear of mortgages. Two days later respondent wrote Conklin that when the latter received the abstract it would show a $700 mortgage unsatisfied on the premises, but promised such mortgage should be speedily discharged. It never was. In the summer following it was foreclosed. Respondent made repeated promises to Conklin to pay it before redemption expired, and subsequent thereto, when Conklin had been compelled to buy in the sheriff's certificate at a cost of over $1,000 to save his home, respondent made new promises of reimbursement but never has paid anything.

The only excuse offered for his deliberate misrepresentations to Conklin that he received clear title by the deed is that the abstractor had erroneously omitted the $700 mortgage from the abstract, and he concluded it was not recorded, and hence it would be subsequent to a third mortgage to his brother for $683, and that he had an arrangement with Mrs. Munro, the administratrix of the estate of her husband who had bought the $700 mortgage from the mortgagee Murdock, by which he could settle at a discount so that the $1,501.71 check received by his mother would be sufficient to discharge both mortgages. The referee's findings and the evidence make clear that there is no truth in respondent's so-called excuses. The abstract upon which he plants his argument (rightfully excluded by the referee), if considered by us, itself shows that all three mortgages were entered thereon at one and the same time, namely, October 26, 1921, when the certificate of that date was made, and shows that the Murdock mortgage was prior to the one to respondent's brother. Respondent had no arrangement or promise of a discount from Mrs. Munro. The referee so finds. Respondent produced no check or receipt from his brother showing the amount he had paid, if anything, for a satisfaction of the third, or the $683 mortgage held by the brother. The evidence also leads to the conclusion that the $700 mortgage was given by respondent's parents to make good

some misappropriation by respondent while he had charge of Murdock's store during the latter's absence in the east for a few months, so he cannot in any event plead ignorance of its existence. It is clear that the consideration for the deed was in the hands of respondent and not in the mother's, and so the referee finds.

While Conklin did not employ respondent so that this charge can be said to involve misconduct of a lawyer to his client, we nevertheless think respondent occupied such a position to Conklin that his knowingly false statement that the deed given conveyed a title free from mortgages was professional misconduct. He knew of Conklin's ignorance and inexperience in matters of this kind, and in his trust in him as a lawyer who did know both as a matter of fact and of law whether or not the title to this property was by the deed of his mother conveyed clear and free of mortgages. Misconduct or deception towards others than clients and in matters other than legal controversies or lawsuits may be such as to require the removal of an attorney from his office. In re Disbarment of Cary, 146 Minn. 80, 177 N. W. 801, 9 A. L. R. 1272; In re Disbarment of Condon, 157 Minn. 24, 195 N. W. 492; In re Removal of Karatz, 162 Minn. 80, 202 N. W. 74. Although apparently recognizing that his wilful misconduct caused a loss of over $1,000 to a man who could ill afford it, respondent has let more than three years pass without making good the loss in any amount.

Our conclusion is that Myron L. Skinner be removed from the roll of attorneys allowed to practice in the courts of this state. Let formal judgment be entered accordingly.