# IN RE DISBARMENT OF ELMER N. WALEEN.[1]

November 3, 1933.

No. 29,453.

*Oscar G. Haugland* and *A. L. Beardsley,* for state board of law examiners.

*Benjamin Drake,* for respondent.

*PER CURIAM.*

The charges filed against the respondent were referred to the Honorable James C. Michael, judge of the second judicial district, to take evidence and make findings of fact. The complaint con-

[1]Reported in 250 N. W. 798.

tains seven counts, two of which were abandoned at the hearing. The findings regarding respondent's misconduct were based upon his own testimony and upon that of other witnesses with whom respondent dealt. The five remaining charges upon which findings have been made will here be discussed in as much detail as is necessary for an understanding of the questions involved.

Respondent, in addition to engaging in the practice of law, also was engaged rather extensively in the real estate and mortgage loan business. On some occasions he represented other persons, and in many instances he handled real estate of which he was the owner.

*First count.* On or about May 14, 1932, respondent, as owner of certain real estate, entered into an earnest money contract with William R. Jessup and wife for the sale of said property. The purchasers paid respondent $100 earnest money and agreed to pay the last half of the 1931 taxes and unpaid instalments of special assessments. The earnest money contract was in the usual form. Respondent expressly represented that all back taxes against said premises were paid except the 1931 taxes. This representation was untrue, as were other representations made at the same time by respondent respecting the condition of his title and the existence of liens against the same. Respondent, in violation of the contract, wholly failed to clear the title to said premises within the requisite time. The Jessups thereafter gave notice of the termination of the contract and demanded the return of the $100 earnest money. There is ample ground for concluding that at the time respondent made said contract and accepted the earnest money he knew or ought to have known that he was unable financially to carry out the contract. The $100 earnest money was returned to the Jessups only after several months had elapsed and after the matter had been called to respondent's attention by the ethics committee of the Hennepin county bar association. There was here no relationship of attorney and client as between respondent and the Jessups.

*Second count.* For many years prior to September 30, 1929, respondent had had extensive dealings with one Anna R. Svanda, and the confidential relationship of attorney and client had existed between them. Prior to September 30, 1929, respondent applied to

Anna R. Svanda for a loan of $2,200 on some property which he owned. There is ample support in the record for the finding that in order to induce Anna R. Svanda to make such loan respondent represented that said premises were free and clear of all encumbrances. Anna R. Svanda believed and relied upon the representation of respondent and made the loan of $2,200. Respondent executed to Anna R. Svanda his promissory note, which purported to be a first mortgage note, and also executed a mortgage, which contained a covenant that the premises were free from all encumbrances. This was not the fact, as respondent well knew, for there was an unsatisfied first mortgage against the premises in the sum of $1,800, and the 1928 taxes were unpaid and were at the time a lien against the premises. No part of the principal of the Svanda mortgage had been paid at the time of the hearing. Anna R. Svanda, in order to protect her mortgage, purchased the sheriff's certificate based upon the foreclosure sale of the first mortgage and paid therefor the sum of $1,909.92. Anna R. Svanda at the time of this hearing was 73 years of age and understood but imperfectly her course of dealings with respondent. She was represented by no attorney in this matter and reposed full confidence in the honesty and integrity of respondent. Here was a relationship of attorney and client violated by the acts of respondent.

*Third count.* Prior to October 27, 1928, respondent sold certain property owned by him to William C. Carrier and wife on a contract for deed subject to a $1,200 mortgage. On October 27, 1928, the Carriers placed in respondent's hands the sum of $328 for the purpose of having the mortgage reduced and refinanced or extended. Respondent, though he made some attempts to procure a new mortgage, wholly neglected to make any reasonable effort to secure an extension of the existing mortgage or to pay to the mortgagee the amount of money turned over to him by Carrier. After holding this money for two years and after the mortgagee had commenced foreclosure proceedings, respondent, on December 20, 1930, repaid the money to the Carriers. There was here no relationship of attorney and client.

The *fourth count* was abandoned.

*Fifth count.* Respondent placed in the columns of a legal newspaper in Minneapolis a great number of legal publications between January, 1928, and September, 1932. He collected the publication fees from his respective clients, but instead of paying said fees to the publisher respondent wrongfully appropriated and converted said publication fees to his own use. With minor exceptions, no part of the publication fees collected by respondent was paid to the publisher until December, 1932, and then not until the matter had been several times called to the attention of respondent by the ethics committee of the Hennepin county bar association. There is credible testimony sustaining the finding that there never was any agreement between respondent and the publishers extending credit to respondent for the publication fees for the length of time here involved. The money given to respondent by his clients for the discharge of these particular obligations to the publisher should have been promptly turned over by him. Respondent had no interest in the money except to discharge his plain duty to his clients. Here the relationship of attorney and client existed.

The *sixth count* was abandoned at the trial.

*Seventh count.* Prior to 1929 and while acting as attorney for one Philip Petrie, respondent borrowed $1,500 from him, giving as security therefor a real estate mortgage signed by respondent and his wife. The mortgage and debt secured thereby, becoming due on July 3, 1929, were extended for a period of three years. Sometime prior to 1930 respondent sold the premises to one Bishop, who assumed and agreed to pay said mortgage and the debt secured thereby. The interest on said mortgage was payable semiannually at the rate of six and one-half per cent per annum. Bishop paid the interest on the mortgage promptly when due. Respondent, still representing Petrie as his attorney, collected and received from Bishop for Petrie during the years, 1930, 1931, and 1932 interest on the mortgage amounting to $215. In addition, he received from Bishop $120 to apply upon the principal of said mortgage debt, in all $335. Respondent failed to account for or to pay over to his client, Petrie, the greater part of said money so collected by him. On the contrary, he wrongfully appropriated and converted the

same to his own use. He did pay over some small amounts aggregating $87.86. On April 20, 1932, Petrie was adjudged incompetent, and Julia Petrie was appointed his guardian. On August 24, 1932, respondent gave a check for $97.50 to the attorneys for said guardian to apply on said claim, but this check was returned unpaid by the bank for lack of sufficient funds. The balance, amounting to $247.14, was unpaid at the time of the hearing.

It is true that respecting some of the charges the relationship of attorney and client did not exist. Respondent urges that since his misconduct did not arise out of a relationship of attorney and client it cannot come under the designation of professional misconduct. It is well settled that in other than legal controversies an attorney may be disciplined or removed where the misconduct or deception is clearly established and where he is guilty of such acts of dishonesty as would offend the rules of fair dealing and honesty in an ordinary business transaction. In re Disbarment of Smith, 183 Minn. 220, 236 N. W. 324; In re Disbarment of Moerke, 184 Minn. 314, 238 N. W. 690. In the case of In re Disbarment of Cary, 146 Minn. 80, 86, 177 N. W. 801, 803, 9 A. L. R. 1272, the court, quoting from In re Peck, 88 Conn. 447, 450, 91 A. 274, Ann. Cas. 1917B, 227, said:

" 'Professional honesty and honor are not to be expected as the accompaniment of dishonesty and dishonor in other relations. So it is that we, in common with other courts, hold, as did Lord Mansfield more than a century ago, that misconduct, indicative of moral unfitness for the profession, whether it be professional or nonprofessional, justifies dismissal as well as exclusion from the bar.' "

Again, in In re Disbarment of Skinner, 171 Minn. 437, 439, 214 N. W. 652, 653, the court said:

"Misconduct or deception towards others than clients and in matters other than legal controversies or lawsuits may be such as to require the removal of an attorney from his office."

The most charitable view that can be taken of respondent's conduct is that he evidenced a lack of appreciation for his duties as

an attorney. It is further a fact that even in those cases where the relationship of attorney and client did not exist he was guilty of such negligence and disregard of the property rights of others as to violate all rules of fair and honest business conduct. Respondent, as an attorney at law, even in ordinary business transactions, was bound by more rigid rules and was bound to exercise a higher degree of care and diligence than would a lay person engaged in the conduct of his private business.

Findings of the referee are approved and adopted by this court, and as its conclusion this court orders that judgment be entered suspending respondent from the practice of law for a period of three years from the date of the entry of this order.

STONE, Justice (dissenting).

I cannot agree that this is not a case for disbarment as distinguished from suspension.

LORING, Justice (dissenting).

I think there should be disbarment.