STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL, PLAINTIFF, V. FRED P. MARCONNIT, DEFENDANT.

280 N. W. 216

FILED JUNE 10, 1938. No. 30205.

*Richard C. Hunter, Attorney General, Francis V. Robinson* and *Paul P. Massey,* for plaintiff.

*Fred P. Marconnit* and *Joseph D. Houston,* for defendant.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and RYAN, District Judge.

DAY, J.

The attorney general began disbarment proceedings against the respondent, Fred P. Marconnit, by filing an original complaint in this court. This comes before us now on a motion of the attorney general for judgment on the report of the referee. There were no briefs filed, but the representative of the attorney general, Mr. Paul P.

Massey, and the respondent himself appeared before the court and argued the matter comprehensively.

There were two specifications in the complaint, but the referee found in favor of the respondent upon one, and it will not be further considered by us. The referee, the Honorable George W. Pratt, found that the respondent in his conduct and dealings as an attorney has violated his oath, and violated the confidence placed in him by his client, and violated the duty which he owed to that client. The referee further found that by his conduct and his breach of duty he had been unprofessional, and he recommended his disbarment.

The respondent has filed written objections to the report of the referee which are more or less of a formal nature, but which include all of the objections made orally before this court by the respondent, and they will be discussed and determined. It appears from the record that in September, 1933, there was transferred to the respondent by Pearl Wyrick, a client, certain stock in the Omaha Loan & Building Association. This transfer was made so that the respondent might sell the stock to some third party and that Pearl Wyrick could thereby realize something from the stock. It further appears that the stock was not subject to immediate withdrawal on account of the inability of the Omaha Loan & Building Association to make immediate payments upon withdrawal. The evidence further establishes that the respondent immediately caused to be transferred to himself the shares of stock which had been transferred to him for the purpose of selling to another, and that he used the shares of stock as collateral for a loan, and that the stock was subsequently sold in order that something might be realized on the collateral. It is apparent from the record that this stock passed out of the hands of the respondent and was not subject to his control after October 6, 1933. At that time he did not report that fact to Mrs. Wyrick, and later on he negotiated with her at a time when she did not have any stock, and he had transferred her stock out of his hands for the

purchase of said stock, and paid her approximately $379 at different times during the first half of 1934.

With this statement of facts we come to the first contention of the respondent that he did not receive any stock or any money from Mrs. Wyrick in a professional capacity. He states, and he sought to prove by evidence, that, in his transaction with Mrs. Wyrick, his was the relationship of a broker and not that of an attorney. A well-recognized authority states the rule thus: "The possession of a good moral character is universally required as a condition precedent to the right to admission to practice." 6 C. J. 573. And again the same authority states: "The standard of personal and professional integrity which should be applied to persons admitted to practice law is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law." 6 C. J. 574.

In Nebraska, section 7-102, Comp. St. 1929, requires that an applicant for admission to the bar shall be of good moral character, and the rules of this court make the same requirement, so that in this state the possession of a good moral character is required as a condition precedent to the right to practice law. This requirement obtains whether the transaction complained of occurred in a professional capacity or not. If the contention of the respondent is true, and he was acting as a broker when the stock was transferred to him, he was not honest with his client when he did not tell her that the stock was beyond his ownership and control. He was not able to return the stock to her after October 6, 1933. By concealing this fact, he later entered into negotiations for the purchase of said stock himself, and made a payment, the amount of which is disputed, but which is approximately $400, in the first half of 1934. It will be remembered that Mrs. Wyrick had, previous to that time, been a client of the respondent, and that he had handled many legal matters for her. This is only important as it shows the previous relationship between the parties, and the manner in which she approached him in her problem of selling the stock. It is not necessary that

one, in order to be found not of good moral character, must have shown affirmatively that his character was not such that he did not possess common honesty in the professional relationship. Even if his relationship is that of a broker, and if he violated the trust obligation as was done in this case, and concealed the fact from his *cestui que trust*, he does not possess the requisite moral character of an attorney. This is not to be misunderstood by the profession as meaning that an attorney is required to pay his debts beyond his ability in order to continue to practice law, but it does mean that the attorney cannot enter into another relationship and act dishonestly, and avoid an action of disbarment because of moral turpitude simply because he was not acting in his professional capacity. In a sister state the court of last resort stated the rule very tersely: "Misconduct indicative of moral unfitness for the profession is sufficient to justify the court in suspending an attorney from the practice of law even though the misconduct arose out of transactions where there existed no attorney-client relationship between such attorney and those with whom he dealt." *In re Disbarment of Waleen,* 190 Minn. 13, 250 N. W. 798. More recently this court held: "Misconduct of an attorney, indicative of moral unfitness for the profession sufficient to deny an applicant admission to the bar, even if the act is not committed in a professional capacity, justifies disbarment." *State v. Scoville,* 123 Neb. 457, 243 N. W. 269. Later this court held, in *State v. Black,* 125 Neb. 382, 251 N. W. 109, following the *Scoville* case, to the same effect.

We think the rule applicable in this case is that the misconduct of an attorney indicative of moral unfitness to practice law, although not committed in a professional relationship, justifies disbarment. Surely the conduct of the respondent in this case, whether he was acting as the attorney or the broker for Mrs. Wyrick at the time the stock was transferred to him for sale in trust, was reprehensible when, after the trust property had passed from his hands, he bargained with her without disclosing to her

the fact that he had already disposed of the stock and that he did not have any stock in his hands. He deceived and misled Mrs. Wyrick, and he caused her to sell the stock to him without paying for it. It was his duty at the time to disclose the facts to Mrs. Wyrick, and he did not do this.

Much was said by the respondent as to a judgment returned in favor of Mrs. Wyrick by the district court which was not appealed from, and which was final against the respondent. Mrs. Wyrick brought an action in the district court to recover the value of the stock which she claimed had been transferred to him for the purpose of sale. She recovered a judgment, and much is said in the record by the representative of the attorney general, the respondent, and the referee as to the fact of this judgment. The opinion was expressed that the judgment was final as to the relationship between the respondent and Mrs. Wyrick. The parties hereto discussed *State v. Priest*, 118 Neb. 47, 223 N. W. 635, where it was held that "a suit for an accounting brought by the client against the said attorney is a final determination as to the rights of the attorney and client to the fund in question." Whether the judgment in *Wyrick v. Marconnit* is final in this case furnishes an interesting question for discussion. However, no prejudice resulted because the record discloses that the defendant testified as to the relationship and the representative of the attorney general offered to include all the evidence in that case. The respondent objected to that evidence, so that, if any error could be predicated upon that matter, the respondent is not in a position to raise it. It is a familiar rule of law, well established in this state, that one cannot lead a trial court into error and then predicate an appeal on that error. It is apparent from the record that the respondent did not offer any evidence which was rejected, and for that reason he cannot now predicate objections to the referee's report on that ground. One cannot predicate error upon anything which he himself has induced in the trial court. The entire record indicates that the respondent did not deal

honestly with Mrs. Wyrick, and regardless of the relationship between them the conduct indicates a lack of moral character which an attorney is required to maintain. It is therefore ordered that a judgment of disbarment be entered in accordance with the report of the referee, and that Fred P. Marconnit is enjoined from practicing law directly or indirectly through his agents and attorneys.

JUDGMENT OF DISBARMENT.