## In re José Antonio Liceaga, Respondent.

No. 100.   Resubmitted February 6, 1961.—Decided March 10, 1961.

246

*Carmen L. Santini* and *Enrique Belén Trujillo* for respondent. *J. B. Fernández Badillo, Attorney General, William Fred Santiago, Assistant Attorney General,* and *Gerardo Méndez Correa, Special Prosecuting Attorney,* for The People.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Respondent José Antonio Liceaga was admitted to the practice of law on February 24, 1950. He held the office of District Judge from April 16, 1951 until September 30, 1957, when his resignation became effective. The facts to which we shall refer hereinafter occurred while the respondent was acting as District Judge of Carolina.

On September 1, 1959 and in compliance with our decision of the preceding May 18, the Attorney General of Puerto Rico filed a complaint against Mr. Liceaga, charging him with the following counts:

"FIRST CHARGE

"That while he held the office of Judge of the District Court of Puerto Rico, Carolina Part, and within the period between October 13, 1956 and September 13, 1957, he sentenced and imposed fines and costs on various defendants at the time when several cases were being submitted to him for determination of probable cause without any complaint having been filed, and having appropriated to his own use and benefit the sum of $577.25 for fines and costs which he had imposed in an illegal manner; which money was reimbursed to the Office of the Secretary of the Court days before his resignation was effective, it appearing in the record that said judgments were imposed on September 13, 1957, on which date the respondent was on vacation and the court was not holding any sessions whatsoever in the town of Carolina; said acts constituting immoral conduct unbecoming an attorney at law who performs the duty of a judge.

"SECOND CHARGE

"That the respondent borrowed money from Manuel Fernández Corujo, who was accused of a violation of the Weights and Measures Act, which case was going to be heard before him, of which fact he was aware. Fernández Corujo was ac-

quitted and the money which the respondent had borrowed from him has not been paid yet, this fact constituting immoral conduct, unbecoming an attorney at law who performs the duty of judge."

The respondent answered and denied that his conduct had been immoral and unbecoming, and in relation to the first charge he specifically denied having appropriated "to his own use and benefit" the amount of fines and costs imposed in the manner described in said charge. We appointed Hon. José M. Calderón to receive the evidence and to submit a report with his findings of fact. The report was presented, and with the exception of the objections raised by the respondent to which we will refer hereinafter, it has been accepted by the parties.

I

In the first place and although it has not been raised by the respondent, we should consider whether, within our function to discipline the legal profession, immoral and unbecoming conduct adopted by an attorney while performing the duty of judge, or on occasion of his functions as such, constitutes sufficient cause for disbarment.

The removal, as well as the admission to the practice of law, is an inherent power of the Supreme Court of Puerto Rico. *In re Pagán*, 71 P.R.R. 712 (1950); *In re Abella*, 67 P.R.R. 211 (1947); *In re González*, 65 P.R.R. 357 (1945); *In re Bosch*, 65 P.R.R. 232, 235 (1945); *Ex parte Jiménez*, 55 P.R.R. 51 (1939). For that reason, the causes which the Legislature [1] decrees for disbarment do not exclude

---

[1] Section 9 of the Act of March 11, 1909 (Sess. Laws, p. 96, 4 L.P.R.A. § 735) enumerates as causes for disbarment or suspension, deceit, malpractice, felony, misdemeanor committed in connection with the practice of the profession or any crime involving moral turpitude; *In re Hernández*, 79 P.R.R. 32 (1956); § 10 (4 L.P.R.A. § 736) of said law refers to deceit or collusion, or consent to any deceit or collusion with intent to deceive the court or a party; § 11 (4 L.P.R.A. § 742) states as cause for removal from office, the purchase, subject to certain exceptions, of a thing in action, for the purpose of bringing an action thereon; § 7 of Act No. 17

our power to order the removal of a lawyer for other causes, *In re González, supra,* which "covers any imaginable just cause." *In re Tormes,* 30 P.R.R. 248. This is so because, among other things, it is not the purpose of a disbarment proceeding to punish an attorney for the fault committed, but to protect the community and the profession by an inquiry into the attorney's moral fitness to determine whether he may continue as such. The ruling criterion is one of social prophylaxis; it follows that the cause for disbarment or suspension does not necessarily arise as a consequence of the professional activity, but rather where it involves the moral conditions of the respondent.[2]

In *In re Abella,* 67 P.R.R. 211, 220 (1947) we considered a similar situation upon deciding a disbarment proceeding for conduct adopted by the respondent while he held the office of Registrar of Property. We held specifically that respondent's misconduct in the performance of said duties is pertinent "in determining if he is fit to remain a member of the bar." At the time when the complaint was heard Abella had ceased in his duty as Registrar.

---

of June 10, 1939 (Sp. Sess. Laws, p. 50, 4 L.P.R.A. § 740) states as cause for disbarment the fact that any lawyer authorizes with his signature, deeds, pleadings and documents concerning which the said lawyer is not the true bona fide attorney or notary in the matter, or the substitute of the said attorney or notary.

[2] See, as cases illustrating that the cause for disbarment need not be related to the practice of the profession: *State ex rel Hunter* v. *Marconnit,* 280 N. W. 216 (Neb. 1938) (broker); *In re Conner,* 207 S.W.2d 492 (Mo. 1947); *Oregon State Bar* v. *Schmalz,* 129 P.2d 825 (Ore. 1942) and *State ex rel. Nebraska State Bar Ass'n* v. *Merten,* 7 N.W.2d 874 (Neb. 1938) (judicial administrator); *Clark* v. *State Bar,* 246 P.2d 1 (Cal. 1952) and *In re Rackoff,* 71 N.Y.S.2d 199 (1947) (tutor); see, also, *In re Portnick,* 169 N.Y.S.2d 178 (1957); *In re Shapiro,* 34 N.Y.S.2d 285 (1942) and *In re Bennethum,* 161 A.2d 229 (Del. 1960). *Cf. In re Currás,* 81 P.R.R. 626 (1960); *In re Aponte,* 79 P.R.R. 3 (1956), in which he was suspended only from the practice of the notarial profession. See, also, Gorman, *Attorneys, Private Misconduct as Ground for Disciplinary Action,* 31 Notre Dame Law 69 (1955); Bugliari, *Disbarment: Non-Professional Conduct Demonstrating Unfitness to Practice,* 43 Cornell L. Q. 489 (1958); Mapel, *Extra-Professional Misconduct as a Ground for the Disbarment of an Attorney in Pennsylvania,* 62 Dick. L. R. 268 (1958).

The majority of state jurisdictions have adopted the rule that immoral and unbecoming conduct adopted by an attorney while performing the duty of judge, constitutes sufficient cause for his removal from the practice of the profession. In the recent case of *Gordon* v. *Clinkscales*, 114 S.E.2d 15 (Ga. 1960), the principle of both rules is discussed, and when that of the majority is favored, it is added that although a judge can not be disbarred for errors of appreciation dictated by his understanding of the law, irrespective of how grave or evident they may be—*cf. In re Watson*, 286 P.2d 254 (Nev. 1955)—conduct revealing lack of moral preparation justifies his removal from the profession. To the same effect see, among others, *State ex rel. Nebraska State Bar Ass'n* v. *Wiebusch*, 45 N.W.2d 583 (Neb. 1951); *In re Williams*, 128 S.W.2d 1098 (Mo. 1939); *In re Garry*, 44 N.E.2d 7 (Ill. 1942) and *In re Stolen*, 214 N.W. 379 (Wis. 1927). *Cf. Court May Discipline State Attorney General for Professional Misconduct*, 73 Harv. L. R. 779 (1960).

We therefore decide that unbecoming and immoral conduct adopted by a judge may cause his disbarment or suspension as attorney at law, even if he has ceased as a magistrate on the date the proceedings are commenced.

## II

██ In the report presented, the Master found that in addition to the loan made from Manuel Fernández Corujo, to which the second charge specifically refers, the evidence revealed that the respondent, during his tenure as judge of the District of Carolina, received loans from other persons; in two occasions he made out checks without having sufficient funds at the time of their issuance; and that he intervened in a sale transaction of an immovable, and the proceeds which were trusted to his custody were not deposited at the office of the clerk of the Court.[3]

---

[3] Master's report, pp. 16–18, incl.

The respondent has requested the elimination of this part of the report because "that evidence is not related to the charges presented in the complaint and was not an object of proof as far as the respondent and his attorneys remember." As to the second ground it is sufficient to say that the respondent's own statement given to the prosecuting attorney sufficiently supports the findings of the Master.[4] Because of our final conclusion in disposing of this complaint, it is unnecessary for us to decide whether in the absence of a specific charge to that effect, we may consider evidence about other acts and conduct of the respondent which tend to justify his disbarment.[5]

## III

■■ The Master found proved the first charge preferred against the respondent. We have examined the evidence offered and we are satisfied that the findings of said officer are extensively supported, and that it has been established that while the respondent was performing the duty of Judge in the District of Carolina, he sentenced and imposed fines and costs on eighteen defendants at the time the cases were being submitted by the police officers for determination of probable cause and when the complaint had not been filed yet, and that the respondent kept in his possession the money which he charged on account thereof. Afterwards, he reimbursed the amount collected and made the date when sentence was pronounced appear as the date when the money was reimbursed.[6] In appendix A, which we attach to this opinion, we shall present a picture of the different cases in which

---

[4] Sworn statement of respondent José A. Liceaga, pp. 263–67, 281–88, and 298–300 (Exh. 2 of the petitioner) which the respondent also submitted in evidence (Tr. Ev., p. 48).

[5] See Gerding, *Rules of Evidence in Disbarment, Habeas Corpus, and Grand Jury Proceedings*, 58 Mich. L. R. 1218 (1960).

[6] In his findings of facts the Master, apparently, relying on the tacit acceptance of the answer to the complaint, established that the respondent retained in his possession until September 13, 1957 the amount of the fines "imposed" in all the cases as well as the costs collected. This is

this occurred, to which we shall refer in order to present more graphically the conclusion that we reached after analyzing the entire evidence.

The conduct observed by the respondent is extremely serious; it would have been sufficient cause for his removal as judge and renders him incapable of continuing in the practice of the profession as attorney. Even though the respondent restored the amounts retained by him we must nevertheless act rigorously, because his conduct tends to impair the public's concept of justice and to underrate the moral conditions which every attorney should possess.

As to the second charge, we should state that the evidence does not show conclusively that the concession of the loan made by Fernández Corujo to the respondent influenced the judicial determination of the latter within the criminal prosecution on trial. The mere coincidence of the acquittal is not sufficient ground for the sole inference that there exists a relation between the loan transaction and the final determination of the case.[7] Nevertheless, the respondent should not have intervened in the case of Fernández, and his conduct, in doing so, deserves our condemnation since, because of his position as a magistrate of the community, his acts should respond to the standards which insure confidence and respect of his fellow-citizens and which remove, at every instance, the slightest suspicion that his acts are swayed by any other influence than strictly the merits of the case on trial. Even though it does not constitute one of the express

the situation regarding seventeen cases, but not regarding the other five cases. See appendix A of this opinion. We do not find that the respondent acted incorrectly in cases T-57-1458 (Eugenio P. Sosa and T-57-1627 (Emilia Claudio).

[7] The testimonies of the respondent (Tr. Ev., pp. 12–13 and of the witness Mr. Abraham Freyre (Tr. Ev., pp. 16–20) rather demonstrate that the defendant Fernández Corujo was skillfully represented, that his lawyer raised various questions in law; that the result of the case was doubtful, and that the respondent intervened to advise the defendant so that he would admit his guilt, which the latter refused to do.

causes for a judge's disqualification, the only thing to be expected of a judge who is conscious of his duties and of the delicate function of administering justice, is not to intervene in those matters in which the person who has made a loan to him may be interested, directly or indirectly.  In this way alone may he maintain the faith in justice which is essential to our system of living.[8]  It is the duty of the judges to observe a conduct which tends to preserve the confidence and respect which the judicial system requires, especially in the District Courts, where the citizens are in closer contact with the administration of justice.

In view of the seriousness of the acts committed by the respondent and of our obligation to maintain the faith of the people in the administration of justice at the highest level of public responsibility, we order the removal of respondent José A. Liceaga from the practice of the law profession and we order that his name be stricken from the Roll of Attorneys.

---

### APPENDIX A

| | | Date of Filing | Date Judgment and Payment of Fines | Date Collection Fines and Costs | Receipt Number |
|---|---|---|---|---|---|
| T-56-738 | Ramón Llanos Bultrón | 6/19/56 | 9/13/57 | 3/30/56 | 5104048 |
| T-56-739 | Ramón Llanos Bultrón | 6/19/56 | 9/13/57 | 3/10/56 | 5104049 |
| T-56-1804 | Jovino Ribot Piñero | 11/8/56 | 9/13/57 | 11/4/56 | 514046 |
| T-56-2050 | Primitivo Millán Soto | 11/23/56 | 9/13/57 | 11/11/56 | 514044 |
| T-56-2051 | Esther Pérez de Jesús | 11/23/56 | 9/13/57 | 11/11/56 | 514045 |
| T-56-2058 | Andrés Rivera Marín | 11/26/56 | 9/13/57 | 11/19/56 | 514047 |
| T-56-2099 | Julio García Díaz | 11/27/56 | 9/13/57 | 11/22/56 | 514035 |
| T-56-2237 | Benicio Sánchez Rivera | 11/29/56 | 9/13/57 | 11/16/56 | 514043 |
| T-57-368 | Andrés Torres Padilla | 10/26/56 | 9/13/57 | 10/13/56 | 514055 |
| | | | | | 514056 |
| T-57-938 | José Dolores Rosa Ponce | 3/25/57 | 9/13/57 | 3/19/57 | 514037 |
| T-57-1062 | Angel R. Benítez Malpica | 4/23/57 | 5/22/57 | 4/9/57 | 448200 |
| T-57-1258 | Marcial Tapia | 4/17/57 | 9/13/57 | 4/9/57 | 514050 |
| T-57-1259 | Lorenzo Márquez | 4/17/57 | 9/13/57 | 4/9/57 | 515053 |
| T-57-1260 | Lorenzo Márquez | 4/17/57 | 9/13/57 | 4/9/57 | 514051 |

---

[8] *Cf.* Canon VIII of the Canons of Judicial Ethics for the Judiciary of the Commonwealth (4 L.P.R.A., App. IV, C. VIII) in effect since September 24, 1957.

| | | Date of Filing | Date Judgment and Payment of Fines | Date Collection Fines and Costs | Receipt Number |
|---|---|---|---|---|---|
| T-57-1261 | Laura Roberto | 4/17/57 | 6/7/57 | 4/9/57 | 461527 |
| T-57-1263 | Lorenzo Márquez | 4/17/57 | 9/13/57 | 4/9/57 | 514052 |
| T-57-1264 | Lorenzo Márquez | 4/17/57 | 9/13/57 | 4/9/57 | 514054 |
| T-57-1266 | Ramón Ortiz Ortiz | 4/17/57 | 9/13/57 | 4/7/57 | 514040 |
| T-57-1268 | Daniel Pino | 4/17/57 | 9/13/57 | 4/7/57 | 514038 |
| T-57-1273 | Lino Viera | 4/12/57 | 6/7/57 | 4/6/57 | 461526 |
| T-57-1274 | Francisco Sabat | 4/12/57 | 6/7/57 | 4/9/57 | 461525 |
| T-57-3500 | José A. Bloise Castro | 8/22/57 | 9/4/57 | 8/3/57 | ——— |