STATE, EX REL. NEBRASKA STATE BAR ASSOCIATION, COMPLAINANT, V. JAMES W. MCGAN, RESPONDENT.

294 N. W. 430

FILED OCTOBER 25, 1940. No. 30789.

*Walter R. Johnson, Attorney General,* and *Edwin Vail,* for complainant.

*James W. McGan, pro se.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is a proceeding for the discipline of the respondent, an attorney duly admitted to the bar and licensed to practice law in this state. Preliminary proceedings have been held before the committee on inquiry of the fourth judicial district in accordance with the rules of this court. The matter is now before us on the record and findings of the referee appointed by this court.

The complaint filed sets forth three transactions alleged to constitute professional misconduct and violations of the standards of ethics prescribed for lawyers in the practice of their profession in this state.

The record discloses that about two years prior to December 31, 1938, the respondent, through the recommendation of one L. J. Cowen, was employed by Mary Duckworth Field, Iris Leeper and C. J. Coates, all of Redfield, Iowa, to handle a personal injury action against the James Way Motor Freight Company. A contract of employment was entered into whereby respondent was to receive 45 *per centum* of any amount recovered, whether by suit or settlement. On December 31, 1938, during the pendency of the action, respondent negotiated a settlement and received $1,350 as full payment of his clients' claims. It is not disputed that the sum of $742.50 belonged to and was immediately due respondent's clients. It appears that respondent's clients did not find out about the settlement until Cowen discovered it through other attorneys interested in the case. The clients then commenced their efforts to obtain the amount due them. On February 9, 1939, respondent paid $250 of the amount due. After innumerable letters and calls, the balance was collected and receipted for on May 17, 1939, the day before the committee on inquiry formally heard the complaint. It is apparent that the committee on inquiry had no knowledge of the settlement with the clients until after its decision had been reached.

Respondent contends that he held up the funds in an attempt to collect fees and expenses in other cases in which Cowen was interested. We are unimpressed with this story for many reasons apparent from the record. In the first place, Cowen was not a party to the contract of employment and had no interest in the case. Respondent's clients had informed him that Cowen had no claim against the fund and respondent had confirmed the information by letter on February 9, 1939. There is no evidence in the record that Cowen ever claimed anything due him except respondent's statement to that effect. Even if respondent's clients were indebted to Cowen, there was no obligation on the part of respondent to act other than in accordance with the contract made with his clients. The evidence shows that the $742.50 was placed in respondent's savings account in the bank of which he was a customer. The fact that he could only pay $250 on February 9, 1939, and was compelled to borrow the $492.50 he paid on May 17, 1939, is conclusive evidence that he had applied the money to his personal use. That such conduct violates the standards of legal ethics prescribed for lawyers practicing in this state is beyond question. This court has long been committed to the rule that failure of an attorney to account for, or the misappropriation of, money of his clients collected or received in his professional capacity is in violation of his duty as an attorney to maintain the respect due to the courts and the profession, and is ground for disbarment. *State v. Priest,* 123 Neb. 241, 242 N. W. 433, and *State v. Ireland,* 125 Neb. 570, 251 N. W. 119.

The record further discloses that respondent obtained a settlement on the personal injury claims of one L. L. Fiedler and his minor son, residents of Los Angeles, California, growing out of an accident which occurred at Valley, Nebraska, on or about July 1, 1938. Respondent entered into a contract of employment whereby he was to receive for his services 50 *per centum* of the recovery after deducting all expenses, including medical expense. A settlement of the claims of respondent's clients and others interested there-

in was made by respondent in the amount of $1,724. This amount was delivered to respondent, and all parties were paid the amounts due them except Fiedler and his minor son. The record shows that drafts for the amounts due Fiedler and his son were sent on December 6, 1938, to respondent, who in turn forwarded them to Fiedler for indorsement, with the promise that the net proceeds due Fiedler would be remitted by respondent immediately upon the return of the indorsed drafts. The drafts were subsequently returned to respondent, properly indorsed, but payment was not made. The record is replete with letters demanding payment, most of which were not answered by the respondent. The amount due Fiedler and his son was $211.55. Respondent contends that only $151.46 was due. The larger item of the difference was brought about by the application of a California statute limiting the attorney fee in a case of this character to 33 1/3 *per centum* of the recovery where a minor's rights are involved. The order of the court was communicated to respondent. Many letters over a period of several months were ignored. The clients communicated with respondent's associate in the hope that settlement could be obtained. It appears that respondent settled the dispute with Fiedler in August, 1939, or thereabouts, by paying the sum of $179.98, after the matter was out of the hands of the committee on inquiry. We think the facts in this case reflect a course of conduct on the part of respondent that is not commensurate with the standards of ethics required of one engaged in the practice of the law. While we realize that there was basis for disagreement as to the amount of the fee to which respondent was entitled, yet his failure to diligently attempt to adjust the differences, his refusal to answer the many letters directed to him concerning it, his refusal to appear before the committee on inquiry and disclose the facts as he saw them, and his apparent willingness to make a settlement only after the report of the committee on inquiry had recommended disciplinary action, leads us to the conclusion that his conduct was other than is expected of an ethical lawyer in dealing with his client.

The record further shows that on or about October 23, 1937, respondent was representing one Anna Anderson in a claim against the Metropolitan Utilities District of Omaha, for damages for injuries sustained when Anna Anderson fainted and, in falling, pulled a tub of boiling water over and upon herself. It was contended that she fainted as a result of escaping gas from the mains or pipes of the utilities company. Settlement was made on a basis of $750, with the additional stipulation that the company would pay Anna Anderson $100 to cover the expenses of trips made by her from her home in western Nebraska to Omaha.

Respondent had entered into a contract of employment whereby he was to receive 50 *per centum* of the amount recovered after first deducting hospital and doctor bills. At the time settlement was made, hospital and medical bills in excess of $1,300 were filed. An order was procured from the district court allocating $375 to the payment of hospital and medical bills, and the balance was released to Anna Anderson. It is evident under the terms of the contract of employment that respondent was entitled to $187.50 and that Anna Anderson was entitled to $187.50 plus the $100 expense money paid to her by the Metropolitan Utilities District direct. In making settlement with his client respondent took $275 and gave Anna Anderson $100 in addition to the $100 expense check for which she gave a receipt. Later, she discovered that the settlement was not in accordance with the contract and demanded an additional $87.50, which respondent refused to pay. Complaint was made to the committee on inquiry which, after hearing, suggested that respondent pay Anna Anderson the sum of $87.50. This he refused to do and the matter was then included in the disciplinary proceeding being filed in this court. The record shows that respondent paid the $87.50 to Anna Anderson after a recommendation by the committee on inquiry that a disciplinary action be brought against the respondent.

Respondent contends that the $100 given to Anna Anderson by the Metropolitan Utilities District to cover expenses was a part of the recovery and that he was entitled to share

in it. The evidence will not sustain any such conclusion, but if it did, respondent did not settle with Anna Anderson even on that basis. Assuming that the $100 was a part of the recovery, Anna Anderson should have received $237.50 instead of the $200 paid to her. The claim that the $100 was to be included in the recovery appears to be an afterthought without any basis in fact. We feel that the conduct of respondent in this matter was anything but exemplary and tends to show that respondent does not have the moral fitness required of one engaging in the practice of law in this state.

The record discloses that respondent settled with his clients during the pendency of the disciplinary proceedings. Payment of such claims under the pressure of pending disciplinary action does not have much weight in showing moral fitness to engage in the practice of law. Ordinarily, a settlement with clients does not preclude an inquiry into the moral and professional quality of an attorney's acts in connection with the complaint. It must be borne in mind that the disbarment of an attorney is not punishment for crime, nor for the purpose of enforcing remedies between the parties, but to remove a person shown to be unfit for the discharge of the duties of the office and to protect the courts, the legal profession and the public.

We have not overlooked the fact that the referee appointed by this court has arrived at a conclusion contrary to what we have herein said. A careful and painstaking examination of the evidence, however, convinces us that the first charge discussed in this opinion is amply sustained by the evidence that respondent abused and took advantage of the confidence and trust reposed in him by his clients, collected money belonging to his clients and failed to account therefor, caused said money to be commingled with his own personal funds and used by him for his own personal use. The very least that can be said of the two subsequent charges is that they show an utter disregard of the rights of his clients and of the ethical standards of the profession. Such irresponsible conduct requires this court to exercise its dis-

ciplinary powers for the protection of the public. We are obliged, therefore, under the record, to enter a judgment of disbarment.

JUDGMENT OF DISBARMENT.