STATE, EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR,
v. CLIFFORD L. REIN, RESPONDENT.
4 N. W. (2d) 829

FILED JULY 10, 1942.   No. 31186.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke,* for relator.

*Chambers, Holland & Locke,* for respondent.

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is a disciplinary action instituted by the state of Nebraska on relation of the Nebraska State Bar Association against Clifford L. Rein, a duly licensed attorney at law, whereby it is sought to bring about his disbarment because of illegal, improper and unethical practices and conduct engaged in by him. A complaint containing the specifications of the claimed practices and conduct was filed in this court on which issues were joined, whereupon the matter was referred to the Honorable Jean B. Cain as referee whose province it was to make findings of fact and conclusions of law and report them to this court. The proceeding is now before the court on the findings and the report of the Referee that the respondent has violated his oath as an attorney and counselor at law and has engaged in unprofessional, unethical and improper conduct, and the exceptions of the respondent thereto.

The complaint contains ten separate specific charges of improper conduct in the relations of Rein with clients, three charges of unethical and improper provisions contained in contracts used in the attorney and client relationship and

five general charges which amount to a summary of the elements involved in the specific charges.

In the report of the referee four of the first ten charges are sustained, and the three relating to contractual provisions are sustained. As to the last named five the referee reports that they have been covered under other headings. As to the remaining six charges the referee found that they were not sustained, but in three of them he pointed out substantially that while wrong-doing was not shown the practices there outlined were not ethically above criticism.

The details of all of the separate charges will not be set forth in this opinion.

The first charge to which reference will be made is the one referred to by the parties as the Lewis matter. As to this matter the details need not be recited. The respondent admits that what he did in this matter was a violation of the duty that he owed to the people represented by him, and of his duties and obligations as an attorney at law.

He argues that the matter is lacking in seriousness and that severe disciplinary action should not be imposed since he claims no one suffered because of the infraction.

The facts are, however, that he took, and for a period of years used as his own, funds belonging to a guardianship estate for which he was attorney, and for which funds he has never to this day accounted directly to the guardian or to the estate. It became necessary for the surety on the bond of the guardian to make the estate whole. He seeks to minimize the enormity of his defection by the assertion that he has since reimbursed the surety. This cannot be accepted in absolution or in mitigation of the enormity of this kind of wrongful conduct on the part of an attorney at law.

In the recent case of *State v. Hendrickson,* 138 Neb. 846, 295 N. W. 892, it was stated: "Settlement with the principal by payment of the claim evidenced by the assigned judgment, under the circumstances, after exposure and investigation by the State Bar Association, did not settle respondent's accountability to the court, to the bar and to the public." See, also, *State v. Priest,* 123 Neb. 241, 242 N. W. 433; *State v. McGan,* 138 Neb. 665, 294 N. W. 430.

The facts which brought forth the foregoing statement were somewhat different from the ones we are examining here, but since in both cases the question of accountability for misuse of funds of a client was involved the principle there stated applies here. Here settlement was not even made with the principal, but was made with the surety of the principal after the surety was required to respond. Here the acts justify even more severe condemnation.

The next charge to which attention is directed is the one referred to as the Wasenmiller matter. The details necessary to a consideration of this matter are the following: In April, 1931, respondent entered into a contract with one Amalia Wasenmiller by the terms of which he and another attorney were employed to institute action against Robert E. McDonnell and others for damages for the wrongful death of Alexander Wasenmiller, the deceased husband of Amalia Wasenmiller. By the terms of the contract respondent was to receive a fee equal to 50 per cent. of any judgment recovered. Action was instituted in the district court for Lancaster county, Nebraska, which action was transferred to the United States district court at Lincoln, Nebraska. The case was tried and on December 9, 1933, a verdict and judgment were obtained for $20,000. Nothing was paid on the judgment until December 24, 1934, when $17,554.16 was paid into court. Of this amount $13,412.41 was paid to respondent, $188.32 was retained as clerk's fees and the remaining amount was held pending a dispute between the defendant and the University of Nebraska, this remaining amount being the equivalent of the sum which had been paid as compensation benefits by the University of Nebraska for the injury and death of Alexander Wasenmiller. The University of Nebraska claimed right of subrogation to the judgment in that amount. The balance of the judgment was paid in February, 1935, and in consequence respondent received an additional $3,651.75, and the University of Nebraska received $4,006.72. Thus respondent received on behalf of his client as the avails of the judgment with interest the total sum of $17,064.16, and the University of Nebraska

by virtue of its right of subrogation received therefrom $4,006.72.

Respondent claimed as his proper fee under the contract one-half of the entire recovery with interest, including the $4,006.72 which was paid to the University of Nebraska, or $10,612.90.

On December 31, 1934, a petition for distribution was prepared by respondent and signed by Amalia Wasenmiller which showed the total distributive share of the widow and minor children as $4,432.81. This obviously was based on the partial payment of the judgment.

Amalia Wasenmiller objected through another attorney to the distribution which was after final and full payment of the judgment. To this objection respondent filed, on August 15, 1935, an answer in which he set forth that $1,944.27 had been paid, and that there was still due $3,531.94, and that the total distributive share of the widow and minor children out of the entire recovery with interest was $5,476.21, after deducting as fees in the case $10,612.90 and expenses. It was also stated in the answer that the amount remaining due was $3,624.40, and that respondent was entitled to $250 fees for other or extra services.

On May 29, 1936, the county court of Lancaster county, Nebraska, entered an order of distribution finding the balance due the estate to be $3,614.40. From this order an appeal was taken to the district court which is still pending.

The appeal came on for hearing in the district court on April 26, 1937. It was never tried. However, at that time certain most singular steps were taken. Respondent announced that he did not have the money, which he admitted to be due the estate, notwithstanding that he had received all of the avails of the judgment and did not claim to have paid any sum except $1,944.27.

It was then stipulated in the presence of the district judge that respondent was to become administrator of the estate of Alexander Wasenmiller and furnish a bond of $5,000 as such administrator. It was further stipulated that on appointment respondent was to pay $1,000 in cash, and an ad-

ditional $100 a month, begining June 1, 1937, until he had paid $4,000 in addition to the cash payment of $1,000, or a total of $5,000.

Why this was done we are not able to say, but from the record we can say with certainty that the trial judge and the representatives of the Wasenmiller estate were confronted with a defalcation on the part of the attorney for the estate amounting to at least $3,614.40, and claimed by Amalia Wasenmiller to be much in excess of that amount, with no ability on the part of the attorney to make good his default. Also, they were confronted with a situation wherein Amalia Wasenmiller as administratrix was liable for the default of respondent although none of the money with which she was chargeable had ever come into her hands, except $1,944.27.

It doubtlessly appeared that the agreement and stipulation for appointment of respondent as administrator of the estate was a scheme and a device, but apparently the only discernible method whereby the liability of the administratrix could be protected, and the estate to the extent of $5,000 could be made whole.

Respondent was appointed administrator and gave the $5,000 bond with St. Paul Mercury Indemnity Company as surety on his bond.

In his application to the surety company for the bond, clearly on the basis of the record respondent practiced a fraud on that company. In his application to the company he stated, among other things, that he was not indebted to the estate.

It is clear that respondent never complied with the terms of the foregoing stipulation and that he was in default on April 1, 1940, when in an effort to obtain the money agreed to be paid by him a new stipulation was entered into, reducing the amount of monthly payments to $50 a month. At the time of the hearing before the referee, respondent still owed under the stipulation, according to the admission contained in his brief, the sum of $980.

There are other details concerning this transaction which could be set out, but we think those that are set forth are

sufficient to furnish a fair understanding of this phase of the charge against the respondent.

In addition to the charge of commingling of funds and defalcation, there is a complaint that the contract for fees is unconscionable and excessive.

As to this charge it is our opinion that the matter is not properly before the court in this disciplinary action. The matter was presented to and passed upon by the county court of Lancaster county, Nebraska, and from the action appeal was taken to the district court where the proceeding is still pending. In the light of these facts it appears that this matter should not at this time be considered here.

That the funds in question in the hands of the respondent were trust funds, there can be no doubt. This proposition is so well settled that citation of authority is not necessary. Also that they remained such and that no act of the attorney with reference to them could change or convert the relationship into one of debtor and creditor is equally well settled. *State v. Goldman,* 127 Neb. 340, 255 N. W. 32.

The question of what constituted or made up the trust fund is a pertinent one. The question answered is that all of the money received in payment of the judgment constituted the trust fund, not only that which the respondent laid no claim to but also that portion which he claimed as a fee under his contract. The judgment was hers as were also the avails of the judgment. The most that respondent had prior to settlement of his fee was a lien upon the money which came into his hands. Comp. St. 1929, sec. 7-108. *Van Etten v. State,* 24 Neb. 734, 40 N. W. 289; *Burleigh v. Palmer,* 74 Neb. 122, 103 N. W. 1068.

That respondent in the handling of this money violated the solemn and sacred duty imposed upon him by his oath as an attorney and his statutory duty with regard to these funds in' his hands is proved beyond question. Also, to any and all lawyers who are sensible of their professional duties and obligations, such practices are readily recognizable as transgressions meriting withdrawal of the right to practice law from any and all who are found to have engaged in such practices.

There are two other charges somewhat similar in character to the two already described that we find are sufficiently proved by the evidence; however, we deem it unnecessary to do more than to refer to them as they are designated in the briefs. They are the Walker matter and the Griggs matter.

As to the so-called Gleason, Schmidt and Gotchall-Mahaney matters the respondent is proved to have engaged in practices which are not free from question, but taken alone, on the record, would hardly justify disciplinary action.

As to the so-called Hill, Selders and Maney v. Hamer matters we agree with the referee that these charges have not been sufficiently proved.

Respondent is charged with having engaged in champertous practices by the use of contracts containing the following provision: "In the event that the said ———— recovers nothing in said compensation action, or upon said compensation claim, he shall owe the said Clifford L. Rein nothing for his services and disbursements, pursuant to this agreement."

In *Omaha & R. V. R. Co. v. Brady*, 39 Neb. 27, 57 N. W. 767, the practice contemplated by the contract, a part of which is quoted, is condemned as champertous. The following is found in the opinion: "It will be observed that one of the essential elements of the vice of champerty is that the champertor must carry on the litigation at his own expense."

This court in *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N. W. 265, adopted the Canons of Professional Ethics of the American Bar Association as the canons to which the ethics of the lawyers of Nebraska shall conform. Canon 42 is as follows:

"A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may in good faith advance expenses as a matter of convenience, but subject to reimbursement."

That practices conformable to quoted provision of the contract used by respondent are in violation of our code of ethics can hardly be questioned.

It is charged that a further provision in contracts of re-

spondent with clients is improper. The provision is as follows: "Upon the security of this cause of action with the signature of all the parties to this agreement, Clifford L. Rein may borrow the sum of not to exceed $100 to be used for costs and expenses of litigation."

If given the interpretation claimed for it by the respondent, that is, that the pledge itself must be signed by the client, then the provision is harmless. If, however, the provision may be interpreted to mean that the signature to the agreement by the client gives the right to Rein to pledge the cause of action, then it ought to be condemned.

From a careful consideration of this record, parts of which we have pointed out in this opinion, we have concluded that over a period beginning as early as 1927, and carrying over to the date of hearing before the referee herein, the respondent has engaged in practices violative of his oath of office as an attorney and that his conduct has been such that he should no longer be permitted to retain his license to practice law.

The order of admission of Clifford L. Rein to the bar of this state is therefore annulled, and his name is ordered stricken from the roll of attorneys and counselors at law.

JUDGMENT OF DISBARMENT.