STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. WILLIAM NIKLAUS, RESPONDENT.

33 N. W. 2d 145

Filed June 29, 1948.   No. 32112.

*Herbert W. Baird,* for respondent.

*Walter R. Johnson,* Attorney General, and *Leslie Boslaugh,* for relator.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is a disciplinary action and an original proceeding initiated against William Niklaus, respondent, a duly licensed attorney at law, in conformity with the rules of this court. The purpose of the action is to question the right of the respondent to retain his license and to continue in the practice of the law.

The petition was filed in the name of the State of Nebraska ex rel. Nebraska State Bar Association, as relator, and will herein be referred to as such.

The matter was referred for hearing to Robert R. Moodie, as referee, and comes here on his report and the respondent's exceptions thereto.

Article X of the Rules Creating, Controlling, and Regulating the Nebraska State Bar Association provides: "The ethical standards relating to the practice of law in this state shall be the canons of Professional Ethics of the American Bar Association, including the additions and amendments as of January 1, 1945, thereto, and those which may from time to time be approved by the Supreme Court."

In adopting the rules of the integrated bar in the case of In re Integration of the Nebraska State Bar Assn., 133 Neb. 283, 275 N. W. 265, we said: "An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course. The lawyers cannot serve two masters; and the one they have undertaken to serve primarily is the court."

Prior thereto, in the case of State v. Fisher, 103 Neb. 736, 174 N. W. 320, we had said that: " 'The lawyer's life must be one of fidelity and stern integrity.' In re Sitton, 177 Pac. (Okla.) 555. 'In granting a license to

practice law it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts. * * *.' State v. Burr, 19 Neb. 593."

And, as stated in 7 C. J. S., Attorney and Client, § 23, p. 753: "A duty rests on the courts to maintain the integrity of the legal profession by disbarring attorneys who indulge in practices designed to bring the courts or the profession into disrepute, or to perpetrate a fraud on the courts, or to corrupt and defeat the administration of justice. An attorney may be suspended or disbarred for perverting, or attempting to pervert, a decision of a cause on the merits, by deceiving or misleading the court, by bribing or tampering with witnesses or jurors, by stifling or suppressing evidence, by introducing evidence or allowing evidence to be given which he knows to be false or forged, by knowingly making false or forged affidavits, or having them made, for the purpose of deceiving the court, or by incorporating misstatements in the pleadings or in the papers in a case before the court."

The charges against the respondent arise out of litigation involving a tract of land in Lancaster County, Nebraska, which, according to the record, contains somewhere between 623 and 678 acres. This litigation has extended over many years. It involves numerous actions which either seek to relitigate the same issues which have already been determined or to litigate issues incident to and arising out of previous actions. Since, as stated in State ex rel. Nebraska State Bar Assn. v. Price, 144 Neb. 542, 13 N. W. 2d 714, "In a disbarment proceeding only those matters which are specifically charged in the complaint can be considered," it would serve no useful purpose to set forth the history of this litigation, but it will be referred to only as it relates itself to the charges made.

In considering the charges we shall apply the rule that

they must be established by a clear preponderance of the evidence. See State ex rel. Nebraska State Bar Assn. v. Price, *supra*.

The petition charges, the referee found, and the evidence establishes that the respondent failed to properly account and actually pay to the trustee in bankruptcy of the bankrupt estate of Theodore F. Barnes money belonging to said trustee and which respondent received as his attorney.

The record discloses that on January 5, 1922, Theodore F. Barnes filed his voluntary petition in bankruptcy in the District Court of the United States for the District of Wyoming and was adjudicated a bankrupt and discharged as such on March 27, 1922. The bankrupt did not list any Lancaster County lands as part of his assets. Thereafter, on August 27, 1928, respondent, representing Gertrude D. Reed, one of the creditors of Theodore F. Barnes, filed a petition in said bankrupt estate asking that the proceedings be reopened and a trustee appointed for the reason that the bankrupt, at the time he filed his petition, was actually the owner of a tract of land in Lancaster County consisting of some 678 acres. The prayer of this petition was granted and on September 18, 1928, John C. Pickett was appointed and thereupon qualified and acted as trustee of said estate. The trustee, on October 1, 1928, through his attorney, the respondent, who had been authorized by the referee in bankruptcy to act as such, went into possession of the Lancaster County lands and collected the rents therefrom.

Thereafter, on February 15, 1929, ancillary proceedings were had in the District Court of the United States for the District of Nebraska, Lincoln Division, and William M. Holt was appointed and qualified as ancillary receiver. During the period he acted as such he collected the rents from the Lancaster County land and accounted therefor. During this period respondent acted as his attorney. On August 7, 1934, pursuant to proper authorization, the ancillary receiver paid to respondent as

attorney for John C. Pickett, the trustee, the sum of $2,842.50 in cash and delivered to him a note of $228.75. This note respondent subsequently collected in full together with interest thereon in the sum of $46.04.

Although these items are set forth in respondent's subsequent accounting as made to the trustee, the funds were never actually paid to the trustee by respondent. On August 25, 1938, Judge Kennedy of the District Court of the United States for the District of Wyoming ordered respondent to pay to either the clerk of that court or the trustee the sums which respondent had received from the ancillary receiver.

This order respondent failed to comply with. He retained the funds and, according to his testimony and accounting, applied $2,750 thereof in payment to himself as attorney for the trustee and ancillary receiver for services he had rendered to them, although such fees had never been allowed and were, on application for their allowance, denied. The balance he applied on expenses which he had had but which expenses had never been authorized and such authorization was, upon application, refused.

The rules of the District Court of the United States for the District of Wyoming provide, insofar as here applicable, as follows: "37. All moneys in bankruptcy estates shall be turned over by the referee, receiver, trustee, or any other officer of the bankruptcy court receiving same, including all deposits by anyone in composition, to the Clerk of the Court, who shall deposit the same to the credit of 'United States District Court, District of Wyoming—Bankruptcy,' in a designated depository who shall have first furnished a satisfactory bond to secure said deposit approved by the Court; and such moneys shall be paid out only upon checks signed by the Clerk of the Court and countersigned by the referee before whom proceedings are pending, in each case upon orders of the judge or referee as the case may require, authorizing

the disbursement of such funds for expenses, claims, dividends or otherwise."

Canon 11 of the Canons of Professional Ethics provides in part as follows: "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

As stated in State ex rel. Nebraska State Bar Assn. v. McGan, 138 Neb. 665, 294 N. W. 430: "This court has long been committed to the rule that failure of an attorney to account for, or the misappropriation of, money of his clients collected or received in his professional capacity is in violation of his duty as an attorney to maintain the respect due to the courts and the profession, and is ground for disbarment. State v. Priest, 123 Neb. 241, 242 N. W. 433, and State v. Ireland, 125 Neb. 570, 251 N. W. 119."

And as stated in State ex rel. Sorensen v. Goldman, 127 Neb. 340, 255 N. W. 32: "From the moment a client's money comes into the possession of an attorney, it should never be viewed as creating a relation of debtor and creditor, but such money should always be considered by such attorney as trust funds, and promptly paid in full, strictly according to the terms of the contract. 2 R. C. L. 966, sec. 42; Armstrong v. Morrow, 166 Wis. 1, Ann. Cas. 1918E, 1156; Berman v. Coakley, 243 Mass. 348, 26 A. L. R. 92; Garceau v. McNamara, 125 Minn. 130; Moore v. Rochester Weaver Mining Co., 42 Nev. 164, 19 A. L. R. 830; State v. Scoville, 123 Neb. 457; State v. Kennedy, 124 Neb. 789; State v. Black, 125 Neb. 382."

These principles are applicable in all cases whether counsel is acting for a private client or for an officer of a court.

The record fully sustains the following conclusion of the referee: "In failing to pay over to his client John C. Pickett, Trustee in Bankruptcy, all of the rentals which

had come into his possession as attorney for said trustee as aforesaid, and in retaining a portion thereof in payment of his own services after the bankruptcy court had specifically denied him compensation for his services, respondent was derelict in his duty as an attorney at law."

The petition charges that the respondent was found guilty of contempt by the district court for Lancaster County in refusing to deliver the rent share of wheat to the receiver appointed by the court in a foreclosure action; that such act was contumacious and contemptuous; and that he was sentenced and served 30 days in jail because of his conduct.

The evidence shows that the district court for Lancaster County, in a foreclosure action therein pending involving the same lands as hereinbefore referred to, appointed a receiver to take charge thereof and collect the rents therefrom. On June 13, 1942, the court entered an order directing the tenant to attorn to and to pay to the receiver all rentals from the property being foreclosed. It appears that the respondent willfully interfered with and sought to prevent this order from being carried out and for which conduct he was found guilty of contempt. The record fully establishes that the respondent's conduct in relation to his interference with the carrying out of the order was contemptuous and contumacious. A full statement of the contempt proceedings can be found in the opinion of In re Application of Niklaus, Niklaus v. Holloway, 144 Neb. 503, 13 N. W. 2d 655.

The petition further charges that in actions before the district court for Lancaster County the respondent has taken a number of inconsistent and contrary positions regarding the facts, which facts were either known to him to be contrary to the representations made to the court in positively verified pleadings which he filed and presented or should have been known to him, by the exercise of reasonable care, to be such.

Canon 22 of the Canons of Professional Ethics provides

in part: "The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness. * * * It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses in drawing affidavits and other documents, and in the presentation of causes."

The evidence shows that the trustee of the bankrupt estate of Theodore F. Barnes actually went into possession of the Lancaster County lands on October 1, 1928, through his attorney, the respondent, and, up until November 20, 1937, when the District Court of the United States for the District of Wyoming finally determined that Theodore F. Barnes had no interest in the lands, respondent filed many pleadings, which he positively verified, to that effect and obtained orders based thereon. After the ruling of November 20, 1937, the respondent, on April 13, 1938, obtained a quitclaim deed to the Lancaster County lands from the heirs of H. E. Erickson, deceased, who had died on November 9, 1932. Thereafter respondent filed positively verified pleadings and made representations that H. E. Erickson had been in actual possession since October 1, 1928, when he knew that from October 1, 1928, to the order of November 20, 1937, the trustee had actually been in possession thereof.

In respect to the foregoing it should be stated that although respondent testified that from sometime in 1927 up until the time of Erickson's death in 1932 he represented H. E. Erickson individually, the record conclusively establishes that he never did represent H. E. Erickson during Erickson's lifetime nor did he represent the Erickson estate. It is true that in being attorney for the trustee he indirectly represented H. E. Erickson for Erickson was one of the creditors of Theodore F. Barnes, the bankrupt. However, respondent had his first direct connection with the Ericksons when, on

April 13, 1938, he acquired his deed from the heirs of H. E. Erickson, deceased.

The referee further concluded that respondent violated canon 10 of the Canons of Professional Ethics when he acquired from the H. E. Erickson heirs their interest in the Lancaster County real estate, which real estate was involved in litigation which he was then conducting for the trustee of the bankrupt estate of Theodore F. Barnes.

Canon 10 of the Canons of Professional Ethics is as follows: "The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting."

We find the record fully sustains this finding for respondent acquired this interest during the time he was seeking to perfect an appeal for the trustee from the November 20, 1937, judgment of the District Court of the United States for the District of Wyoming finding that the bankrupt had no interest therein. By such purchase he sought to acquire an interest in the subject matter of the litigation which he was conducting for the trustee and in conflict therewith.

Other charges are made which find ample support in the record but will not be further set forth for what we have already set forth is sufficient to make necessary that we revoke the respondent's license and to disbar him from the further practice of law.

What was said in State ex rel. Nebraska State Bar Assn. v. Hyde, 138 Neb. 541, 293 N. W. 408, is particularly applicable here. Therein we said: "The events involved have extended over a period of several years. They evidence such a lack of appreciation of, or concern for, the obligations and proprieties of the legal profession, that the court cannot justify his being held out to the public as possessed of the honor, rectitude, responsibility and diligence which the high office of attorney at law demands, and as meriting the confidence which clients necessarily repose in such a relationship. State v. Marconnit, 134 Neb. 898, 280 N. W. 216; State v.

Sowards, 134 Neb. 159, 278 N. W. 148; State v. Hatteroth, 134 Neb. 451, 279 N. W. 153; State v. Goldman, 127 Neb. 340, 255 N. W. 32."

We find that the prayer of relator's petition should be and is granted and the license of the respondent to practice the profession of law is revoked and he is disbarred from the further practice of the profession of law in the State of Nebraska.

RESPONDENT DISBARRED.

CHAPPELL, J., not participating.