# IN THE SUPREME COURT OF IOWA

No. 21–0679

Submitted March 24, 2022—Filed June 10, 2022

**AMANDA DeSOUSA** f/k/a **AMANDA JOHNSTON,**

Appellee,

vs.

**IOWA REALTY CO., INC.,**

Appellant.

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.

A real estate brokerage defendant in a slip-and-fall negligence case seeks interlocutory review of the district court's denial of summary judgment, contending that it owed no duty of care to the prospective buyer of a listed house. **REVERSED AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Oxley, and McDermott, JJ., joined. Appel, J., filed a dissenting opinion. McDonald, J., took no part in the consideration or decision of the case.

Haley Y. Hermanson (argued) and Frank Harty of Nyemaster Goode, P.C., Des Moines, for appellant.

Jordan T. Glaser (argued) of Peters Law Firm, P.C., Council Bluffs, for appellee.

Jodie C. McDougal and Sarah E. Friedricks (until withdrawal) of Dentons Davis Brown, PC, Des Moines, for amici curiae, the National Association of Realtors & the Iowa Association of Realtors.

**MANSFIELD, Justice.**

## I. Introduction.

Possession may not be nine-tenths of the law, but it is an important concept in the law of premises liability. Under the Restatement (Third) of Torts, possessors of land owe a duty of reasonable care to entrants on that land. A possessor is defined as one who occupies and controls land, or one who is entitled to immediately occupy and control land. We have to decide today whether a listing agent who is not present meets the definition of a possessor based merely on the fact that the listing agent has to give permission to prospective buyers and their agents to view the property. We conclude that this gatekeeping function is not by itself enough to make a listing agent a possessor.

Here, the plaintiff slipped and fell when she was on the icy driveway of a home she was considering buying. Neither the owners nor anyone from the listing agency for the then-vacant home were present at the time. The plaintiff sued both the owners and the listing agency. The district court denied the agency's motion for summary judgment, reasoning that the agency—not the owners—had notice that a buyer would be viewing the home that morning. The agency applied for an interlocutory appeal, and we granted the application.

On our review, we conclude that the listing agency does not owe a duty to a prospective buyer to assure the safety of the listed property when the agency is not present and showing the property. In those circumstances, the owners, rather than the agency, retain possession. Therefore, we reverse the district

court's denial of summary judgment and remand for entry of summary judgment in favor of the listing agent.

## II. Background Facts and Proceedings.

In late 2017, Matthew and Melissa Fynaardt moved from their home in Waukee to a new house about seven miles away in Urbandale. They rented out their Waukee home for a short time. The house then became vacant and the Fynaardts put it on the market to sell. They hired Joel Goetsch, a real estate agent with Iowa Realty Company, Inc., to list the home and assist them with the selling process.

Amanda DeSousa was looking to buy a home. On the evening of December 27, 2018, she contacted her agent—who was not affiliated with Iowa Realty—to ask about viewing the Fynaardts' home the following morning. DeSousa needed the appointment to be in the morning because she planned to leave town that afternoon to visit her mother in Omaha. Her agent contacted Goetsch and scheduled a viewing for 9:30 a.m. as requested.

Overnight, a winter storm rolled through central Iowa leaving one inch of snow and icy roads. DeSousa texted her mother about the weather before visiting the Fynaardt home. She told her that she wouldn't leave for Omaha as early as planned because of icy roads and a winter weather advisory that was in effect until noon that day. But DeSousa kept her appointment to visit the Fynaardt home.

When DeSousa arrived, her agent was already there, having parked her vehicle in the driveway. Goetsch was not present. DeSousa's significant other

parked their pickup truck in the driveway. DeSousa grabbed her coffee and got out of the truck. When she stepped forward on the driveway she slipped on ice and sustained injuries from the resulting fall.

On July 1, 2020, DeSousa filed a petition in the Dallas County District Court seeking damages. An amended petition filed sixteen days later named both the Fynaardts and Iowa Realty as defendants. As amended, the petition alleged that the defendants were negligent because they failed to provide adequate warning about the icy driveway and failed to remedy a hazardous condition that they had created.

Iowa Realty moved for summary judgment on January 4, 2021, arguing that it owed no duty to DeSousa because it did not own or possess the property, it had not invited DeSousa to the property, and none of Iowa Realty's agents were present when the slip-and-fall occurred. Iowa Realty also argued that the danger in question had been open and obvious. DeSousa resisted, contending that "there [wa]s a genuine issue of material fact as to whether Iowa Realty exercised any control over the property after they were contracted to sell the house."

A hearing on the summary judgment motion was held by video conference on February 9. Two days later, the court issued an order deferring ruling on the motion. Instead, it directed the parties to submit supplemental briefs on how *Thompson v. Kaczinski* and its progeny applied to the facts of the case. 774 N.W.2d 829 (Iowa 2009).

At this point, the parties took the deposition of Matthew Fynaardt. Matthew testified that he did not know when a potential buyer would visit the

Waukee house; Goetsch handled all of the scheduling. According to Matthew, if Goetsch was showing the home to a potential buyer, Goetsch would prepare the home to "make sure it was ready for whoever was to come." He further explained, "If anything needed to be upkept . . . , whether it's snowing out and shoes were walking in the house, he would clean up the floors, to if the driveway needed to be scooped or just the walkway or path to the house, that he would take care of that for us." But if the potential buyer's agent was the one showing the home, Matthew understood that it was his own responsibility to clear off any snow and ice after a winter storm had passed.[1] Matthew further testified that he had ownership and control of the property. Matthew acknowledged that Goetsch did not have the right to make personal use of the property, make changes to the property, or be on the property without Matthew's approval. On March 5, the parties filed their supplemental briefs and provided a transcript of Matthew's deposition.

On April 17, the district court entered a ruling denying Iowa Realty's motion for summary judgment. It reasoned as follows:

> The property where this incident occurred was owned by the Fynaardt[s], but they were not occupying this residence on the day Plaintiff allegedly sustained her injuries. A reasonable juror could find that the Fynaardt[s] were unaware that the property was being shown to prospective buyers on that day, that Iowa Realty knew or should have known that the exterior walkways or driveway were slick, and that Iowa Realty should have exercised reasonable care to

---

[1]Here was Matthew's specific testimony:

Q. So in a situation where Mr. Goetsch was not going to be the one showing the house to someone, what was your understanding about who would take care of any snow or ice that might exist on the premises?

A. That once a storm had passed I would be over there to clear it off.

ensure they were safe. Under *Thompson v. Kaczinski*, 7[7]4 N.W.2d 829 (Iowa 2009), summary judgment based on the argument that Iowa Realty owed Plaintiff no duty of reasonable care would be inappropriate.

Iowa Realty sought interlocutory review of this decision, and we granted that request.

On appeal, both parties focus their arguments on premises liability and whether Iowa Realty possessed the property. Iowa Realty does not argue that the danger to DeSousa was open and obvious; DeSousa does not contend that Iowa Realty's conduct created a risk to her safety. The fighting issue is whether a sales agent has a duty to protect prospective buyers from hazards on a property they are listing for sale. If no such duty exists, summary judgment should have been granted for Iowa Realty. We have retained the appeal.

**III. Standard of Review.**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "We review a trial court's grant of summary judgment for correction of errors at law." *Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 821 (Iowa 2021) (quoting *Van Fossen v. MidAmerican Energy Co.*, 777 N.W.2d 689, 692 (Iowa 2009)). In doing so, we "view the facts in the light most favorable to the nonmoving party." *Id.* (quoting *Van Fossen*, 777 N.W.2d at 692).

"While summary adjudication is rarely appropriate in negligence cases, the determination of whether a duty is owed under particular circumstances is a

matter of law for the court's determination." *Id.* (quoting *Hoyt v. Gutterz Bowl & Lounge, L.L.C.*, 829 N.W.2d 772, 775 (Iowa 2013)).

### IV. Analysis.

"An actionable negligence claim requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.' " *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012) (quoting *Thompson*, 774 N.W.2d at 834). Here, we must determine whether Iowa Realty owed a duty to protect DeSousa from the wintry hazards present on the Fynaardts' driveway. The district court held that a "reasonable juror could find that . . . Iowa Realty should have exercised reasonable care to ensure [the driveway was] safe." But whether such a duty exists is a question of law to be decided by the court. *See id.* ("Whether a duty arises out of a given relationship is a matter of law for the court's determination." (quoting *Thompson*, 774 N.W.2d at 834)).

Since *Thompson*, when we adopted the duty analysis laid out in the Restatement (Third) of Torts, we consider only two factors in making a duty determination: (1) the relationship between the parties and (2) public policy. *See McCormick*, 819 N.W.2d at 371 ("In short, a lack of duty may be found if either the relationship between the parties or public considerations warrants such a conclusion."). Foreseeability is no longer a factor. *Id.*

Land possessors have an affirmative duty of reasonable care to those who come upon their land. *Gries v. Ames Ecumenical Hous., Inc.*, 944 N.W.2d 626, 629 (Iowa 2020). There is no longer a distinction between invitees and licensees.

*See Koenig v. Koenig*, 766 N.W.2d 635, 643 (Iowa 2009). The Restatement (Third) of Torts describes the extent of a land possessor's duty. *Id.* It states:

> Subject to § 52 [the "flagrant trespasser" rule], a land possessor owes a duty of reasonable care to entrants on the land with regard to:
>
> (a) conduct by the land possessor that creates risks to entrants on the land;
>
> (b) artificial conditions on the land that pose risks to entrants on the land;
>
> (c) natural conditions on the land that pose risks to entrants on the land; and
>
> (d) other risks to entrants on the land when any of the affirmative duties provided in Chapter 7 is applicable.

2 Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 51, at 242 (Am. L. Inst. 2012) [hereinafter Restatement (Third)]; *see also Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 910 (Iowa 2017) (adopting the duty analysis set forth in section 51 of the Restatement (Third) for land possessors).[2]

A natural condition—accumulated snow and ice—caused DeSousa to fall on the Fynaardts' driveway, and the land possessor had a duty to exercise

---

[2]The preface to this chapter of the Restatement (Third) explains, "[R]isks arising from natural conditions, as well as risks arising from artificial conditions created by someone other than the land possessor, are not a result of the conduct of the land possessor and, hence, are not subject to § 7 [the general duty provision]." 2 Restatement (Third) ch. 9, Scope Note, at 222; *see also* 1 Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 cmt. *n*, at 84 (Am. L. Inst. 2010). ("[C]ourts have employed different duty rules for land possessors for harm caused to those on the land. Chapter 9 of this Restatement contains the duties owed by land possessors in such circumstances."). We agree with Iowa Realty that it did not create a risk within the meaning of section 7 of the Restatement (Third). Its position is not comparable to the pilot who "flies the plane into an area of thunderstorms." *Id.* § 7 cmt. *o*, at 84. On this record, at most, Iowa Realty granted DeSousa and her agent permission to access the property. *If* Iowa Realty owed any duty to DeSousa, it could only be that of a land possessor.

reasonable care to prevent DeSousa's fall.[3] There is no dispute about that for purposes of the summary judgment motion at issue here. The dispute lies in whether Iowa Realty was a "land possessor."

According to the Restatement (Third) of Torts:

A possessor of land is

(a) a person who occupies the land and controls it;

(b) a person entitled to immediate occupation and control of the land, if no other person is a possessor of the land under Subsection (a); or

(c) a person who had occupied the land and controlled it, if no other person subsequently became a possessor under Subsection (a) or (b).

2 Restatement (Third) § 49, at 224–25. In this case, the Waukee home was left vacant while it was for sale; thus, the land did not have an occupant as contemplated in subsection (a). So we move to subsection (b) and ask: Who was entitled to immediate occupation and control of the land?

As we explained in *McCormick v. Nikkel & Associates, Inc.*, the existence of a duty arising from the possession of property hinges largely on control. 819 N.W.2d at 371–72 ("[L]iability is premised upon control." (quoting *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 720 n.3 (Iowa 1999))). In that case, the employee of a subcontractor performed electrical work on a switchgear at a jobsite. *Id.* at 369. The subcontractor left without finishing certain work in the switchgear box because the property owner elected to finish the work itself to

---

[3]It is unclear from this record when the snow stopped falling. The continuing storm doctrine is not before us. *See Gries*, 944 N.W.2d at 630–33.

save money. *Id.* The employee locked the box and departed. *Id.* Nearly a week later, the property owner directed a novice employee to perform the work in the box. *Id.* at 370. The employee was badly electrocuted when he attempted to complete the task without first shutting off the power, which he didn't realize was necessary. *Id.* The employee sued the subcontractor for not warning about the danger. *Id.*

We applied our independent contractor line of cases and found that the subcontractor had no duty to the subsequently injured employee. *See id.* at 372–73. Once the subcontractor had finished its work and left, the employer had full control of the switchgear. *Id.* at 373. We reasoned, "The party in control of the work site is best positioned to take precautions to identify risks and take measures to improve safety." *Id.* at 374. *See also Morris,* 958 N.W.2d at 826 ("Liability generally follows control."); *Lewis v. Howard L. Allen Invs., Inc.,* 956 N.W.2d 489, 491–92 (Iowa 2021) (holding that an absent contract seller of property did not owe a duty to users of the property under the Iowa Uniform Residential Landlord Tenant Act); *Van Fossen,* 777 N.W.2d at 696–97 (holding that a property owner does not owe a general duty of reasonable care to the employee of an independent contractor unless it "retains control of the contractor's day-to-day operations"); *Van Essen,* 599 N.W.2d at 719–20 (holding that mere ownership of a leased bin does not establish a duty unless the owner retained "significant control over the bin"); *Robinson v. Poured Walls of Iowa, Inc.,* 553 N.W.2d 873, 876 (Iowa 1996) (deciding that the plaintiff's employer (a subcontractor) had possession of a jobsite, not the contractor because the

contractor had merely hired the subcontractor and checked on the project's progress); *Galloway v. Bankers Tr. Co.*, 420 N.W.2d 437, 441 (Iowa 1988) (declining to apply possessor liability to a trustee owner of a mall when the owner's interest in the mall was "very similar to those of an absentee owner of rental property" and the trustee had not used its power as the owner to "regain the full incidents of ownership, including the right of possession").

Applying the control principle in this case, we conclude that Iowa Realty's role in selling the Fynaardt home did not entitle the brokerage or its agents to occupy or control the property—and they did not occupy or control the property in fact. In Matthew Fynaardt's deposition, he answered questions regarding his authority and control over the Waukee home relative to his agent:

> Q. . . . Did Mr. Goetsch have permission to use the property for his own personal use?
>
> A. No.
>
> Q. Could he make physical changes to the property?
>
> A. No.
>
> Q. If something needed to be repaired, did you expect that Mr. Goetsch would make the repair?
>
> A. No.
>
> Q. If you felt that you didn't want Mr. Goetsch on the property, did you feel like you had the right to tell him to stay off of it?
>
> A. Sure. Yes.
>
> Q. Similarly, if you didn't want Mr. Goetsch to do something to the property, did you feel like you had the right to direct him to not do it?
>
> A. Yes.

Q. And was that because it was your property that you owned?

A. Yes.

Matthew's answers are in accord with a typical seller–agent authority structure. Although the home was vacant, there can be little doubt that the Fynaardts had authority to tell their agent: "Do not let anyone schedule showings of our house today until we have cleared the driveway." Conversely, Goetsch had no right to tell the Fynaardts: "No one can go on the property today until the driveway has been cleared." Hence, the Fynaardts were entitled to immediate occupation and control of the land; Goetsch was not.

No Iowa cases specifically address the relationship presented here. Precedent from other jurisdictions is also sparse. But several courts have held that real estate agents do not control property and do not owe a duty of care to entrants on the property when they are merely contracted to aid in a sale. *See, e.g.*, *Lim v. Gillies*, No. 1 CA–CV 13–0478, 2014 WL 4980379, at *2 (Ariz. Ct. App. Oct. 7, 2014) (affirming summary judgment for the seller's agents when "their only connection to the property was as a listing agent making it available to prospective buyers"); *Lopez v. JP Morgan Chase Bank,* No. FBTCV146046621S, 2016 WL 6237590, at *2 (Conn. Super. Ct. Sept. 28, 2016) (granting summary judgment for the defendant real estate agent when there was "no genuine issue of fact as to whether defendants possessed or controlled or maintained the premises" and stating that agents did not owe a duty "simply by marketing the premises for sale absent possession or control"); *Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682, 687 (Ind. Ct. App. 2006) (finding that a seller's agent who

personally conducted a showing to a potential buyer had no duty of care to the buyer, stating, [W]e decline to impose, on real estate agents who do not control a premises, a duty to inspect properties for sale and to warn prospective buyers of dangerous conditions they discover."); *Knight v. Realty USA.com, Inc.*, 947 N.Y.S.2d 693, 694 (App. Div. 2012) (holding that a broker "whose only connection to the property was listing it for sale and showing it to prospective buyers, met their initial burden on their [summary judgment] motion by establishing that they did not occupy, own, or control the [seller's] home and did not employ it for a special use, and thus did not owe plaintiff a duty of care"); *Francis v. Loviscek*, No. 2017–L–167, 2018 WL 5259148, at *8 (Ohio Ct. App. Oct. 22, 2018) ("[T]he trial court did not err in finding, as a matter of law, that the real estate agent-appellees owed no duty of care to Ms. Francis . . . ."); *id.* (Grendell, J., concurring in judgment) ("[T]here is no evidence that the real estate agents either owned or controlled the premises and certainly not any evidence that they substantially exercised comparable rights and powers. In the absence of such evidence, the foreseeability of the injury is irrelevant to their potential liability."); *Christopher v. McGuire*, 169 P.2d 879, 881 (Or. 1946) ("A real estate broker employed to sell property has the right of entry for such purpose, but can it be said that by so doing he is in 'possession and control' of the property? We think not."); *cf. Butler v. Re/Max New Orleans Props., Inc.*, 828 So. 2d 43, 47 (La. Ct. App. 2002) (finding that contracting to sell a vacant property and being given a key did not amount to "custody" of the property by which the real estate brokerage could be held strictly liable for a drowning death on the property).

Some courts have declined to grant or uphold summary judgment, but in those cases the injury occurred when the real estate agent was conducting an open house or showing the property. *See, e.g.*, *Coughlin v. Harland L. Weaver, Inc.*, 230 P.2d 141, 144–45 (Cal. Dist. Ct. App. 1951) (finding that a sales agent was a possessor of land where one of its agents was showing the property to the plaintiff at the time the accident occurred); *Anderson v. Wiegand*, 567 N.W.2d 452, 455 (Mich. Ct. App. 1997) (deciding that a real estate agent conducting an open house had a duty to protect visitors from hazardous refreeze on the driveway because "the homeowners effectively ceded possession and control of the premises . . . for a brief time[] to the real estate agency"); *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1117 (N.J. 1993) ("Based on the nature and circumstances surrounding an open house, we conclude that implicit in the broker's invitation to customers is some commensurate degree of responsibility for their safety while visiting the premises."); *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 823 (Tenn. Ct. App. 1992) (holding that the seller's real estate agent who personally showed the home to a prospective buyer was a possessor of the property); *Jarr v. Seeco Constr. Co.*, 666 P.2d 392, 395 (Wash. Ct. App. 1983) (finding a duty was owed by a real estate agent conducting an open house when the agent admitted he was in "complete control" of the property and conceded that he "was a possessor of land for purposes of premises liability"); *see also Tamasco v. Rodd,* No. A–1574–16T2, 2018 WL 4055919, at *5 (N.J. Super. Ct. App. Div. Aug. 27, 2018) (per curiam) (affirming summary judgment for the real estate broker and stating that "it is not our role to extend the carefully tailored

duty the Court imposed on real estate brokers in *Hopkins* beyond the open house scenario").

Under DeSousa's theory, the Fynaardts turned over control of their Waukee home to Iowa Realty. Matthew Fynaardt testified to his understanding that requests to see the home would go through Goetsch and that Goetsch would ensure the property was ready for anyone he showed the house to. DeSousa says this amounts to "substantial control" of the property.

DeSousa overstates the reality of the situation. Goetsch wasn't on the property on December 28, 2018—he was only involved in helping sell it. He didn't have the status of a lessee or a contractor in control of a jobsite. Having a right to enter property is not the equivalent of possession or control. *See Johnson v. Humboldt Cnty.*, 913 N.W.2d 256, 263 (Iowa 2018) (noting that an easement does not give possession of land). And scheduling a time for a potential buyer and their agent to visit the home does not require a transfer of control.

If DeSousa's position were correct, then consider the common situation of homeowners who go out of town and leave their keys with a neighbor, friend, or relative. Under DeSousa's theory, the neighbor, friend, or relative could be sued if they allowed someone to have access to the property and an accident occurred.

Or consider how real estate agents would have to change how they do business. Typically, once the seller's agent gives permission to view the property, there is a lockbox on the property to which the buyer's agent is given access. This saves the agents for both parties a lot of time and effort. But if the seller's

agent is going to be legally liable for conditions on the property, the seller's agent will certainly want tighter control over who is on the property and exactly when.

To impose a duty on selling agents would require them to make frequent inspections for hazards lest they risk being found liable for injuries occurring on listed properties. Selling agents might even require a prelisting inspection and certification whose costs would presumably be charged to the seller. Additional services would need to be provided, including snow removal, which again would presumably be charged to the seller. This would drive commissions higher. *See Next Generation Realty, Inc. v. Iowa Realty Co.*, 686 N.W.2d 206, 207 (Iowa 2004) (per curiam) (noting that "[c]ustomarily, Des Moines realtors charge a 7% commission for selling previously owned homes: half going to the seller's agent, half to the buyer's"). And it is questionable for what gain. The property owner normally owes a duty anyway to maintain the property in a safe condition. And the property owner carries homeowners' insurance to cover incidents such as the one alleged to have occurred here.

Accordingly, we hold that a listing agent who is not present and whose role is limited to granting access does not normally owe a duty of due care to persons viewing the property.[4]

---

[4]Our opinion does not address the situation where the listing agent is on-site showing the property.

**V. Conclusion.**

For the foregoing reasons, we reverse the district court's denial of summary judgment and remand for entry of summary judgment in favor of Iowa Realty.

**REVERSED AND REMANDED.**

Christensen, C.J., and Waterman, Oxley, and McDermott, JJ., join this opinion. Appel, J., files a dissenting opinion. McDonald, J., takes no part.

**APPEL, Justice (dissenting).**

I respectfully dissent on the question of whether Iowa Realty Company, Inc. owed a duty of care toward the plaintiff under the special relationship sections of the Restatement (Third) of Torts. 2 Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 49, at 224–25 (Am. L. Inst. 2012) [hereinafter Restatement (Third)]. The plaintiff accepts the proposition that in order to prevail on a premises liability theory, the defendant must have possession or control of the land. Section 49 of the Restatement (Third) provides:

A possessor of land is

(a) a person who occupies the land and controls it;

(b) a person entitled to immediate occupation and control of the land, if no other person is a possessor of the land under Subsection (a); or

(c) a person who had occupied the land and controlled it, if no other person subsequently became a possessor under Subsection (a).

*Id.*

The first question under section 49 is whether there is a person, who occupies the land and controls it. If so, one does not go on to consider whether (b) or (c) apply. In the present case, we need to discuss whether the Fynaardts qualify as a land possessor under section 49(a). To meet the requirement, it is not enough that a person controls the land, and mere ownership alone does not establish occupation or control of the premises. *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 719 (Iowa 1999). The person must "occupy" the land. *Id.*

Questions remain as to the meaning of "occupy." Clearly, it does not mean control since the commentary to the Restatement (Third) emphasizes that mere ownership is not enough. *See* Restatement (Third) § 49 cmt. *b*, at 225. Here, the Fynaardts owned the land, but were not physically present on a regular basis. Matthew Fynaardt stated that the Waukee home was not occupied at the time of the accident. It seems to me then that the requirements of section 49(a) above have not been met. The Fynaardts did not occupy the land. *See Indep. Fire Ins. v. Butler*, 362 So. 2d 980, 982 (Fla. Dist. Ct. App. 1978) ("The term 'occupied' refers to a dwelling which is in actual use by human beings who are living in it as a place of habitation, and a dwelling is 'unoccupied' when it has ceased to be a customary place of habitation or abode, and no one is living or residing in it."); *Hudson Ins. v. McKnight*, 58 S.W.2d 1088, 1089 (Tex. Civ. App. 1933) (making the same distinction as *Butler*).

Under the Restatement (Third), we next move to subsection (b). The relevant question under subsection (b) is whether there is someone who is entitled to immediate occupation and control of the land. I think it is clear that the Fynaardts were entitled under subsection (b) to immediately occupy and control the house. 2 Restatement (Third) § 49(b), at 224–25. If they chose, the Fynaardts could have moved back into the home pending a potential sale at any time. The question then became whether judging from the under-developed record of the parties' contract, Iowa Realty could also be considered as entitled to immediate occupation and control under subsection (b). Note that the

Restatement (Third) section 49 comment *d* expressly contemplates multiple possessors in some situations. *Id.* § 49 cmt. *d*, at 226.

There is evidence in the record that Iowa Realty was entitled to immediately enter the property to remove the ice and snow prior to the entry by Amanda DeSousa. According to property owner Matthew Fynaardt, if there was a showing, Joel Goetsch would "prepare it and make sure it was ready for whoever was to come." Additionally, based on a conversation between him and Goetsch, "if the driveway needed to be scooped . . . [Goetsch] would take care of [it]."

Therefore, with respect to the narrow issue of removal of snow and ice, Iowa Realty arguably had authority to immediately occupy the driveway area and certainly had authority to exercise control to remove the snow and ice. For the purpose of showing the house, there was evidence that the owners and the real estate agents had shared authority to occupy and to control the premises. *See Anderson v. Wiegand*, 567 N.W.2d 452, 456 (Mich. Ct. App. 1997) (noting it is common in the real estate industry for the homeowners to cede possession of the premises to the real estate agents for showing purposes).

I think it was too early to rule on the issue of summary judgment for the real estate agent. The court needs to decide whether, under Restatement (Third) section 49(b), the issue of the right to immediate occupation and control an all-or-nothing proposition, or does it turn on the specific hazard that arises. In other words, the record is lacking as to whether Iowa Realty could obtain immediate occupancy and control of the premises to abate a specific hazard. Whether a

party is a land possessor under subsection (b) is not a binary question for all purposes but turns on the specific facts of the case.

The parties have not cited, and I could not find, any Restatement (Third) cases addressing the issue of whether a real estate agent might be a land possessor even though the agent did not have complete possession and control for all purposes.

There are some cases prior to the adoption of the Restatement (Third) that brush by the issue. For example, in *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1117 (N.J. 1993), the court found that in light of the "nature and circumstances surrounding an open house," a real estate agent might have a limited duty to warn of any discoverable conditions of the property that would pose a threat or danger to visitors. *Id.* at 1119. The *Hopkins* court seems to have rejected an all-or-nothing proposition, but *Hopkins* is not a case under the Restatement (Third) and may have limited value. Similarly, in *Anderson v. Wiegand*, the court recognized a real estate agent had a duty to open house visitors. 567 N.W.2d at 456. The court noted that the owner "ceded possession and control of the premises" at the homeowners request. *Id.*

With respect to pre-Restatement (Third) cases, the courts have imposed a duty on real estate agents with respect to hazards on the property when the agents were conducting an open house. *See, e.g., id.* Great care should be exercised in importing pre-Restatement (Third) cases in the analysis, however. There is nothing in the Restatement (Third) that justifies drawing the line at actual presence on the premises and, indeed, under section 49(b), it is enough if

a person is entitled to immediate occupancy and control. Thus, under the plain language of section 49(b), a person need not be physically present on the land when an accident occurs to have potential liability, but may have liability where there is no person who occupies and controls the land under section 49(a).

I am inclined to believe the best approach is a nuanced one—that land possession is not an all-or-nothing proposition, and that the proper analysis under subsection (b) is whether a party is entitled to immediate control and possession with respect to the specific hazard that is creating the risk. As a result, I would find that under section 49(b), both Iowa Realty and the Fynaardts should be considered possessors in this case. Neither occupied the property, but both had the ability to immediately occupy the property and sufficient control to abate the hazard.

Liability could be avoided, however, if we determined that a "no duty" rule was appropriate as authorized under section 7(b) of the Restatement (Third). 1 Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 7(b), at 77 (Am. L. Inst. 2010); *see also Gries v. Ames Ecumenical Hous., Inc.*, 944 N.W.2d 626, 629–30 (Iowa 2020). Iowa Realty urges us to make such an exception because of public policy. Citing a dissent in *Hopkins*, Iowa Realty suggests that imposing on a real estate agent a duty to inspect a residence for hazards would saddle the real estate industry with additional costs which would be presumably passed on to the consumer. *See Hopkins*, 625 A.2d at 1123–24 (Garibaldi, J., dissenting). Iowa Realty suggests that highly qualified home inspectors will need to be hired prior to marketing a home for sale.

DeSousa responds by noting that in this snow and ice case, no special expertise is needed. DeSousa argues that no special duty is being imposed on real estate agents, but only a duty that properly arises from substantial control of the premises.

I would not find a public policy exception here. Who should bear the loss when a potential purchaser slips and falls on ice on a driveway of a home listed for sale by a real estate agent where the agent has not taken reasonable steps to remove the ice and snow? Is this a "tough luck" situation, where the injured party simply sucks it up and bears the loss? Or, should the loss shift to a third party who had sufficient possession and control to abate the hazard? I do not find Iowa Realty's arguments sufficiently compelling to warrant a public policy exception to the general tort principles provided in the Restatement (Third).

In sum, where there is no person who both occupies and controls the land under section 49(a), then section 49(b) kicks in. Here, a real estate agent might be considered a land possessor if there is evidence that the real estate agent is entitled to immediate occupation and control of the premises in order to abate a specific hazard. In this case, there is evidence that Iowa Realty had such authority. On the record here, I would deny summary judgment as Iowa Realty has not shown it cannot be liable as a matter of law in this case. As a result, I respectfully dissent.